**Howard HAMMOND, Plaintiff and Appellant,**

v.

**NORTH DAKOTA STATE PERSONNEL BOARD, Defendant and Appellee.**

Civ. No. 10341.

Supreme Court of North Dakota.

April 4, 1983.

---

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by James S. Hill, Bismarck.

Kathryn L. Dietz and Marilyn Foss (argued), Asst. Attys. Gen., Bismarck, for defendant and appellee.

ERICKSTAD, Chief Justice.

This is an appeal by Howard Hammond from a judgment of the District Court of Burleigh County, dated October 12, 1982, by which the court dismissed Hammond's administrative appeal, under Chapter 28–32, N.D.C.C., for lack of subject matter jurisdiction. We reverse and remand to the district court for proceedings on the merits of Hammond's administrative appeal.

On March 31, 1982, Charlene Seifert, Director of the State Laboratories Department, terminated Hammond's employment as the department's Chief Chemist. At the time of his termination, Hammond was a classified employee of the State of North Dakota. Upon being terminated, Hammond completed an "Employee Grievance Form" provided by the State of North Dakota and followed various administrative steps culminating in a hearing and determination on the matter by the North Dakota State Personnel Board. On May 26, 1982, the Board entered an order sustaining the termination of Hammond's employment. Hammond appealed the Board's order to the district court, under Chapter 28–32, N.D.C.C. On motion by the Board, the district court dismissed Hammond's appeal for lack of subject matter jurisdiction. The district court's dismissal of Hammond's appeal on jurisdictional grounds was based upon the court's conclusion that the State Personnel Board did not have authority to confirm or deny terminations of employment from non-merit state agencies and that the Board's order, having no legal significance, was not a proper subject matter for appeal to the district court.

Hammond's appeal from the district court requires this Court to resolve the following two issues:

(1) Whether or not the State Personnel Board is an agency whose decisions are appealable under Chapter 28–32, N.D.C.C.; and

(2) Whether or not the State Personnel Board has authority to review dismissals of classified state employees.

In determining that the district court erred in dismissing Hammond's administrative appeal on jurisdictional grounds, we have made the following conclusions, the basis for which we will hereinafter discuss in detail:

(1) The State Personnel Board is not an office or division of the Office of Management and Budget and is not, therefore, exempt under Subsection 28–32–01(1)(a), N.D.C.C., from the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C.

(2) The State Personnel Board is an administrative agency as defined by Subsection 28–32–01(1), N.D.C.C., whose final orders and decisions are appealable to the district court under Section 28–32–15, N.D.C.C.

(3) The State Personnel Board has authority to review dismissals of classified state employees.

■ Subsection 28–32–01(1), N.D.C.C., which defines the term "administrative agency", provides in part relevant to this appeal:

"*28–32–01. Definitions.* In this chapter, unless the context or subject matter otherwise provides:

1. 'Administrative agency' or 'agency' means each board, bureau, commission, department, or other administrative unit of the executive branch of state government, ... The term administrative agency does not include:

a. The office of management and budget except with respect to rules relating to the central personnel system as authorized under section 54–44.3–07 and rules relating to state purchasing practices as required under section 54–44.4–04."

The Board asserts that it is a division of the Office of Management and Budget which is excluded as an administrative agency under Subsection 28–32–01(1)(a), N.D.C.C., except with respect to certain rule-making functions. We disagree with the Board's assertion that it is a division of the Office of Management and Budget. Upon examining and comparing the statutory provisions which create the Office of Management and Budget and various divisions therein with the provision which creates the State Personnel Board, we conclude that the Board is an independent entity which is not an office or division of the Office of Management and Budget.

Section 54–44–02, N.D.C.C., establishes the Office of Management and Budget:

"*54–44–02. State office of management and budget.* There shall be an office of management and budget vested with the duties, powers, and responsibilities necessary to supervise and administer the fiscal transactions of the various state departments, agencies, boards, and commissions."

The following statutory sections create various offices or divisions within the Office of Management and Budget:

"*54–44.1–02. Office of the budget—Director—Employees—Powers.* The office of budget *is hereby established in the office of management and budget,* for the purpose of promoting economy and efficiency in the fiscal management of the state government. The director of the office of management and budget shall be ex officio director of the budget. . . ." [Emphasis added.]

"*54–44.2–01. Office of central data processing—Creation.* The office of central data processing *is hereby established in the office of management and budget.* The director of the office of management and budget shall appoint a director of central data processing. . . ." [Emphasis added.]

"*54–44.3–11. Central personnel division—Director—Appointment—Removal.* There *is hereby created* a central personnel division *within the office of management and budget* under the supervision and control of a director who is responsible for the performance and exercise of the duties, functions, and powers imposed upon the division. . . ." [Emphasis added.]

The foregoing provisions demonstrate that when the Legislature has intended to create an office or division within the Office of Management and Budget it has done so with express language to that effect.

■ Section 54–44.3–03, N.D.C.C., creating the State Personnel Board, does not

make the Board a division of or place the Board within the Office of Management and Budget:

> "*54–44.3–03. State personnel board—Composition—Terms—Vacancies—Qualifications.*
>
> 1. Effective July 1, 1975, there is hereby created a five-member state personnel board. The board shall be composed of a constitutionally elected official, who shall be the chairman of the board; a member appointed by the board of higher education; one member appointed by the governor; and two members elected by employees classified under sections 54–44.3–19 and 54–44.3–20 . . . ."

Although the Legislature has expressly created various offices or divisions within the Office of Management and Budget, Section 54–44.3–03, N.D.C.C., which creates the State Personnel Board, does not make it an office or division within the Office of Management and Budget. Although the Central Personnel Division was created as a division of the Office of Management and Budget, various legislative provisions demonstrate that the State Personnel Board is separate and distinct from the Central Personnel Division. *See,* Section 54–42–01, N.D.C.C.; Section 54–44.3–09, N.D.C.C.; Section 54–44.3–07, N.D.C.C. Consequently, we conclude that the State Personnel Board is an administrative agency as that term is defined under Subsection 28–32–01(1), N.D.C.C., which is not excluded as an administrative agency under Subsection 28–32–01(1)(a), N.D.C.C.

The Board asserts in the alternative that if it is an administrative agency under Chapter 28–32, N.D.C.C., its decisions are not reviewable by the courts under that chapter because there is no statute making its decisions reviewable in the courts of this state. We conclude that Section 28–32–15, N.D.C.C., when interpreted together with the definition of administrative agency under Subsection 28–32–01(1), N.D.C.C., as amended in 1981 by the 47th Legislative Assembly, authorizes an appeal from the State Personnel Board to the district court from its "final orders or decisions and orders or decisions substantially affecting the rights of parties."

Prior to the 1981 amendment, the definition of administrative agency under Subsection 28–32–01(1), N.D.C.C., provided:

> "*28–32–01. Definitions.* —In this chapter, unless the context or subject matter otherwise provides:
>
> 1. 'Administrative agency' or 'the agency' shall include any officer, board, commission, bureau, department, or tribunal other than a court, having statewide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and *which by statute is subject to review in the courts of this state; . . ."* [Emphasis added.]

We construed that provision to mean that an entity did not constitute an administrative agency under Chapter 28–32, N.D.C.C., from which there was a right of appeal under that chapter unless a right of review was expressly granted by statutory provisions other than those located within Chapter 28–32, N.D.C.C. *Knoefler Honey Farms v. Just,* 270 N.W.2d 354 (N.D.1978); *Dakota National Insurance Company v. Commissioner of Insurance,* 79 N.D. 97, 54 N.W.2d 745 (N.D.1952). In 1981, the Legislature amended Subsection 28–32–01(1), N.D.C.C., to exclude from the definition of administrative agency the requirement "which by statute is subject to review in the courts of this state." The primary purpose of statutory construction is to ascertain the intent of the Legislature. *Morton County v. Henke,* 308 N.W.2d 372 (N.D.1981). Any amendment or repeal of any part of a statute must be considered in determining the true intent and objective of the Legislature. *State v. Mees,* 272 N.W.2d 61 (N.D.1978).

The bill amending Subsection 28–32–01(1), N.D.C.C., was introduced as a result of an interim study conducted by the Administrative Rules Committee whose written report provides relevant insight toward the Legislature's intent in amending the subsection:

*"Definition of Administrative Agency*

"Section 28–32–01 defines administrative agency as including:

(A)ny officer, board, commission, bureau, department, or tribunal other than a court, having statewide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state.

"One of the requirements not readily understood is that an agency's decision is one 'which by statute is subject to review in the courts of this state.' In many instances laws administered by an agency do not provide for appeal or judicial review of administrative decisions. Under these circumstances, the agency is not an 'administrative agency' and is not subject to the provisions of Chapter 28–32.

\* \* \* \* \* \*

"Committee members were concerned over the ramifications resulting from an agency not being subject to Chapter 28–32, particularly the lack of standardized rulemaking procedures and the lack of judicial review of agency decisions. Also of concern was the statutory definition of an administrative agency. Under the current definition it is difficult to determine whether an agency is an 'administrative agency' without an Attorney General's opinion or a Supreme Court decision.

\* \* \* \* \* \*

*"Recommendations*

"The committee recommends a bill to redefine 'administrative agency' as used in Chapter 28–32. The bill redefines administrative agency to include every administrative unit of the executive branch of state government. The new definition specifically excepts those agencies or functions currently excepted from the present definition due to an Attorney General's opinion or a Supreme Court decision."

Section 28–32–15, N.D.C.C., which has not been amended subsequent to 1943, is relevant and must be read in conjunction with the amended version of Subsection 28–32–01(1), N.D.C.C., to resolve the question of whether or not the State Personnel Board's decisions are appealable under Chapter 28–32, N.D.C.C. Section 28–32–15, N.D.C.C., provides in part relevant to this issue:

"Any party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from such decision. . . . Only final orders or decisions and orders or decisions substantially affecting the rights of parties are appealable."

Under Section 28–32–01, N.D.C.C., as currently amended, an administrative agency is any administrative unit of the executive branch of state government which is not expressly excluded by Subsection 28–32–01(1), N.D.C.C. The current definition of an administrative agency no longer requires that there be an express statutory grant of a right of review under a statute located outside the provisions of Chapter 28–32, N.D.C.C. Pursuant to Section 28–32–15, N.D.C.C., decisions of administrative agencies which constitute "final orders or decisions and orders or decisions substantially affecting the rights of parties" are appealable to the district court. In view of the 1981 amendment to Subsection 28–32–01(1), N.D.C.C., we construe Section 28–32–15, N.D.C.C., as authorizing a right of appeal from decisions of administrative agencies. Accordingly, we conclude that final decisions of the State Personnel Board are appealable to the district court under Chapter 28–32, N.D.C.C.

The final issue which we must resolve in this case is whether or not the State Personnel Board has authority to review dismissals involving classified state employees. The district court concluded that the Board did not have such authority and on that basis the court dismissed Hammond's appeal for lack of subject matter jurisdiction. To resolve this issue, it is necessary to ex-

amine the statutory provisions creating and setting forth the duties of the State Personnel Board. It is also necessary to examine the 1979 statutory provision directing the Central Personnel Division to assist in the development and implementation of a statewide appeal mechanism.

The State Personnel Board was created in 1975 under Section 54–44.3–03, N.D.C.C. The duties of the Board are set forth under Section 54–44.3–07, N.D.C.C., which in part relevant to this case provides:

> *"54–44.3–07. Duties of board.* The primary responsibility of the board shall be to foster and assure a system of personnel administration in the classified service of state government. In carrying out this function it shall:
>
> 1. Promulgate such rules and hold such hearings as are necessary to properly perform the duties, functions, and powers imposed on or vested in it by law. . . .
>
> \*　\*　\*　\*　\*　\*
>
> 3. Review any personnel action relating to pay ranges or job classification."

The foregoing section gave the Board very broad authority to promulgate such rules and hold such hearings as may be necessary to carry out the responsibilities imposed upon the Board by law. However, with respect to reviewing personnel actions, the section authorized and mandated the Board to review only those personnel actions "relating to pay ranges or job classifications."

Section 54–44.3–12.2, N.D.C.C., which was enacted in 1979, is also relevant to this issue:

> *"54–44.3–12.2. Employee complaints— Cooperation in development and implementation of basic agency grievance procedures and a statewide appeal mechanism.* It is the intent of the state of North Dakota to assure fair and equitable treatment and promote harmony between and among all classified employees. To ensure this the state desires to resolve bona fide employee complaints as quickly as possible. The division *shall cooperate with and assist* the various departments, agencies, and institutions of the state *in the development and implementation of basic agency grievance procedures and a statewide appeal mechanism."* [Emphasis added.]

If a statute is ambiguous or of doubtful meaning, the courts may resort to extrinsic aids in construing the statute, including the legislative history of the statute. Section 1–02–39, N.D.C.C. *Morton County v. Henke,* 308 N.W.2d 372 (N.D.1981); *North American Coal Corp. v. Huber,* 268 N.W.2d 593 (N.D.1978). Under Section 54–44.3–12.2, N.D.C.C., the Legislature has clearly expressed its intent to "assure fair and equitable treatment" among all classified state employees. However, the meaning of the provision is ambiguous or uncertain in that it does not define the term "statewide appeal mechanism" or explain what that mechanism is meant to encompass. Thus, to understand the intent of the Legislature in enacting this provision and to understand the provisions relevance to the authority of the State Personnel Board, it is necessary to examine the legislative history of this 1979 legislation.

House Bill No. 1042 was introduced by the legislative council before the 46th Legislative Assembly in 1979. At the time of its introduction, the bill contained only one section which involved revisions to the classification and compensation plan established by the Central Personnel Division. The bill was eventually sent to a conference committee because of differences in versions of the bill which had passed the House and Senate. It was within this conference committee that a second section was added to the bill authorizing a statewide appeal mechanism. The bill became law, and the provision authorizing a statewide appeal mechanism was codified as Section 54–44.3–12.2, N.D.C.C.

 A letter, dated February 15, 1979, to David Nething, the Senate Majority Leader, from Peg Ralston, the director of the Central Personnel Division, was placed in the permanent files of the conference committee dealing with House Bill No. 1042. Although a letter to one member of

the Legislature is not always an important piece of legislative history, we believe that this letter is an exception because it is in this letter that the director of the Central Personnel Division requested legislation authorizing a statewide appeal mechanism and because the statutory language suggested by the director in the letter for accomplishing the indicated objectives was adopted nearly verbatim as Section 2 of House Bill No. 1042 which became law and is now codified as Section 54–44.3–12.2, N.D.C.C. Because Ralston's suggested statutory language was adopted by the Legislature, we believe that her explanation of the purpose and consequences of enacting that legislation, as stated in her letter to Senator Nething, is relevant in determining the legislative intent in authorizing a statewide appeal mechanism. We quote the most important parts of Ralston's communication to Senator Nething relative to the issue before us on this appeal:

"Senator Melland suggested I pass on to you my thoughts on a statewide appeal mechanism brought on by my desire to provide greater equity and fairness to all state employees, regardless of merit system or non-merit system agency employment. I believe the availability of a grievance procedure within an agency will allow most bona fide complaints/grievances to be settled at the lowest level. For that percentage of grievances not satisfied at the agency level, I would propose a statewide mechanism, still providing an avenue to settle appeals at a state level rather than forcing an employee to seek court action or federal intervention for satisfaction.

\* \* \* \* \* \*

"I would perceive issues of dismissal, suspension without pay, demotion, and discrimination because of race, sex, color, religion, political or religious affiliations, age, national origin, non-job-related handicap or other non-merit factors eligible for consideration through the statewide process.

"My thoughts thus far would include three alternatives listed in order of my preference:

1. The use of a tripartite board

. . . .

2. The use of a state hearings officer who would hear and decide all statewide appeals.

. . . .

3. The use of all or part of the State Personnel Board for the external or statewide process, eliminating the need for greatly increased funding."

Ralston suggested to Nething the following statutory language for accomplishing the objectives of which she spoke in her letter:

"In its desire to assure fair and equitable treatment and promote harmony between and among all classified employees, the state of North Dakota desires to resolve bona fide employee complaints as quickly as possible. The Division shall cooperate and assist the various departments and agencies of the State in the development and implementation of agency grievance procedures and a statewide appeal mechanism."

Upon examining Section 54–44.3–12.2, N.D.C.C., in view of the legislative history of House Bill No. 1042, we believe the legislative intent was to authorize an appeal mechanism for all classified state employees through which they could obtain a review of personnel actions including dismissals. We further construe the legislative intent under Section 54–44.3–12.2, N.D.C.C., as authorizing the Central Personnel Division to include, as part of the statewide appeal mechanism, a review of personnel actions by the State Personnel Board under the Board's general authority "to foster and assure a system of personnel administration in the classified service of state government" and to "hold such hearings" as are necessary to perform the functions vested in the Board by law. Consequently, we construe the broad and general authority given the Board under Section 54–44.3–07, N.D.C.C., together with the legislative authorization for a statewide appeal mechanism under Section 54–44.3–12.2, N.D.C.C., as authorizing the State Personnel Board, upon development and implementation of

the statewide appeal mechanism by the Central Personnel Division, to review all personnel issues subject to review under that mechanism.

The statewide appeal mechanism, as developed and implemented by the Central Personnel Division under Chapter 9 of the State of North Dakota Personnel Policies Manual, includes the following provisions which are particularly relevant to this appeal:

"CHAPTER 9

"Appeals

"Section 1

"Coverage

\* \* \* \* \* \*

"9–1–2 Any classified employee on permanent status may use the Statewide Appeal Mechanism to request a review or reconsideration of the following employment actions: dismissal; demotion; suspension without pay; and discrimination because of sex, age, color, race, religion, national origin, handicapped condition, or political affiliations.

\* \* \* \* \* \*

"Section 2

"Statewide Appeal Mechanism

"9–2–1 It is the intent of the State of North Dakota to insure fair and equitable treatment and promote harmony between and among all classified employees. To insure this, the State desires to resolve bona fide employee complaints as quickly as possible.

\* \* \* \* \* \*

"9–2–6 An employee must have completed his/her agency's internal grievance procedure prior to entering the Statewide Appeal Mechanism.

"9–2–7 The Statewide Appeal Mechanism shall be considered the final step in a multi-step process initiated by an employee.

\* \* \* \* \* \*

"Section 3

"Procedure

"9–3–1 Within five working days of the final step of the agency grievance procedure, the employee must submit the properly completed prescribed form to the State Personnel Board in care of the Central Personnel Division.

\* \* \* \* \* \*

"9–3–5 After the employee hearings examiner has conducted the hearing and investigated and gathered all pertinent facts, the employee hearings examiner shall make a recommendation on behalf of the Central Personnel Division to the State Personnel Board for a binding decision.

\* \* \* \* \* \*

"Section 4

"Definitions for Purposes of This Policy

"9–4–1 'Statewide Appeal Mechanism' is a process whereby the State Personnel Board will be the final step in a multi-step process for resolving employee complaints in the areas of dismissal, demotion, suspension without pay, and discrimination. An employee hearings examiner shall investigate, gather, and present all pertinent facts to the State Personnel Board for a binding administrative decision.

\* \* \* \* \* \*

"9–4–5 'Dismissal' means the involuntary termination of employment of an employee for cause."

Through Chapter 9 of the State of North Dakota Personnel Policies Manual, the statewide appeal mechanism has been implemented as authorized under Section 54–44.3–12.2, N.D.C.C. Under the statewide appeal mechanism, a permanent classified state employee may request a review of his or her dismissal. The State Personnel Board, upon reviewing a personnel action such as a dismissal, makes the final decision in the administrative appeal process.

In view of our conclusion, discussed previously in this opinion, that the State Person-

nel Board is an administrative agency under Chapter 28–32, N.D.C.C., whose final orders are appealable under Section 28–32–15, N.D.C.C., we conclude that the Board's order, dated May 26, 1982, affirming Hammond's dismissal as Chief Chemist with the State Laboratories Department, is appealable to the district court under Chapter 28–32, N.D.C.C. Consequently, we hold that the district court erred in dismissing Hammond's appeal for lack of subject matter jurisdiction. We reverse the judgment of the district court, dated October 12, 1982, and remand for further proceedings on the merits of Hammond's appeal under Chapter 28–32, N.D.C.C.

PEDERSON and SAND, JJ., and BEEDE, District Judge, concur.

BEEDE, District Judge, sitting in place of PAULSON, J., disqualified.

VANDE WALLE, Justice, concurring specially.

I believe the majority opinion reaches an equitable result. Whether or not that result is a correct interpretation of legislative intent may, however, be open to question. I confess it is not entirely clear to me what the legislative intent is with respect to the agencies that are governed by Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act, and in particular the legislative intent with regard to the relationship of the Central Personnel Division to the State Personnel Board and the relationship of either of them to the Administrative Agencies Practice Act. The majority opinion concludes that the State Personnel *Board* is an administrative agency subject to the provisions of Chapter 28–32, including the right of appeal, but the Central Personnel *Division* is not. Section 28–32–01(1)(a) excludes from the term "administrative agency" the Office of Management and Budget "except with respect to rules relating to the central personnel system as authorized under section 54–44.3–07 . . ." Section 54–44.3–07, N.D.C.C., is a section applicable to the State Personnel *Board* and provides, in part, at subsection 1 thereof, that the *Board* has the authority to promul-

gate rules and the promulgation of rules "shall be accomplished in accordance with provisions of chapter 28–32." If the Central Personnel *Division* is a part of the Office of Management and Budget and the State Personnel *Board* is a separate entity from either, then it would be unnecessary for the Legislature to exempt the Office of Management and Budget (and presumably the Central Personnel *Division*) from the operation of Chapter 28–32 but specify that the rules of the State Personnel *Board* are to be adopted in accordance with Chapter 28–32; for if the Board is separate and apart from the Office of Management and Budget and the Central Personnel *Division,* it is not excluded from the provisions of Chapter 28–32 and the rules adopted by it must be promulgated in accordance with Chapter 28–32. See Section 28–32–03, N.D.C.C. To further complicate matters, Section 54–44.3–12(1) gives the director of the Central Personnel *Division* the authority to establish rules and regulations subject to the approval of the State Personnel *Board.* The director of the Central Personnel *Division* is appointed by the director of the Office of Management and Budget. It thus appears that the legislation is at best ambiguous and I conclude that the result reached in the majority opinion, construing legislative intent as to whether or not the State Personnel *Board* is an administrative agency governed by the provisions of Chapter 28–32, N.D.C.C., is as reasonable as a contrary result and I therefore concur with the result reached by the majority opinion in that regard.

I also agree that the effect of the amendments of Section 28–32–01(1) defining an "administrative agency" is to make decisions of administrative agencies subject to judicial review because of Section 28–32–15. The previous decisions of this court, beginning with *Dakota National Insurance Company v. Commissioner of Insurance,* 70 N.D. 97, 54 N.W.2d 745 (1952), are thereby superseded.

I am concerned by the reliance in the majority opinion on the North Dakota Personnel Policies Manual. Whether or not the

*Division* or the *Board* are administrative agencies, it is clear from Section 28–32–01(1) that the rules and regulations relating to the central personnel system are to be promulgated pursuant to Chapter 28–32. Section 28–32–03, N.D.C.C., requires that certain procedures be followed in promulgating the rules. In addition to an approving opinion by the Attorney General, Section 28–32–03 requires that, with certain exceptions, the rules be published in the North Dakota Administrative Code and further provides that "rules not published in the administrative code shall be invalid." Although Chapter 4–02–04 of the North Dakota Administrative Code is concerned with appeals to the State Personnel *Board,* those provisions apply to appeals of classification or salary range except with respect to Merit System agency employees who have a much broader right of appeal, including appeals from dismissals. Mr. Hammond was not an employee of a Merit System agency. See Section 54–52–06, N.D.C.C. The rules upon which the majority opinion relies would therefore appear to be invalid under Section 28–32–03, N.D.C.C., because, from what I can ascertain, they were not published in the Administrative Code.

If, however, the State Personnel *Board* is an administrative agency and if the Board has the authority to review dismissals of all employees, whether or not they are employed by a Merit System agency, the decision of the Board is subject to judicial review independent of any rules. If I were to look only at Section 54–44.3–07, N.D.C.C., entitled "Duties of Board," I would conclude that the Board only has the authority to review personnel action relating to pay ranges or job classification but not employee dismissals. However, as the majority opinion notes, Section 54–44.3–07 was enacted in 1975. Section 54–44.3–12, N.D.

C.C., was enacted in 1979 as Section 2 of Chapter 566, 1979 N.D.Sess.Laws. That section, read in isolation, appears to apply to all employee complaints, including a dismissal, and to require the implementation of agency grievance procedures and a statewide appeal mechanism. But Section 1 of Chapter 566, 1979 N.D.Sess.Laws, codified as Section 54–44.3–12.1, applies to revisions of compensation plans and classifications. Therefore, it is possible that Section 54–44.-3–12, when read in conjunction with Chapter 566, 1979 N.D.Sess.Laws, applies only to grievance procedures with regard to pay ranges or job classifications rather than to dismissals. It is again apparent to me that the provisions are ambiguous. The history of the 1979 legislation as recited in the majority opinion is helpful in construing that legislative intent and I agree with the conclusion reached by the majority. Whether or not that is truly indicative of the legislative intent is, I concede, debatable.[1]

Although there can be little doubt that the statutes with which we are concerned are ambiguous, one point is clear: The State Personnel *Board* did hold a hearing on Hammond's grievance as to his dismissal and did render a decision. At least at that point the Board apparently believed it had the authority to do so. The Board now argues that it had the authority to do so as a result of the consent of the State Laboratories Commission that it do so and that the hearing was therefore without legal effect. Ordinarily, of course, jurisdiction cannot be conferred upon a court by consent. Presumably the same rule applies to administrative agencies. Whether or not the Board was legally authorized to hold a hearing and render a decision is unclear. However, the fact the Board did hold the hearing compounds the ambiguity created by the

1. Several bills to clarify the status of the State Personnel Board were introduced in the 1983 legislative session. See H.B. 1555, H.B. 1251, H.B. 1093, S.B. 2041, and S.B. 2046, Forty-eighth Legislative Assembly. At least two of the bills were the product of interim studies. See pp. 13, 44–46, Report of the Legislative Council, 48th Legislative Assembly. Although the bills are not necessarily indicative of the intent of past legislative assemblies that enacted the statutes we are now called upon to construe [see, e.g., *St. Vincent's Nursing Home v. Department of Labor,* 169 N.W.2d 456 (N.D. 1969)], they would at least be significant in the future in which similar issues may again arise.

statutes. Because of the ambiguity and because, as I noted at the beginning of this special concurrence, the result reached by the majority is an equitable result, I agree with the conclusions reached therein. If the result reached in our attempt to clarify the statutes does not meet with the approval of future legislative assemblies, presumably they will take action to amend the statutes to correspond to what they perceive to be proper.

SAND, J., concurs.