**Howard HAMMOND, Plaintiff and Appellant,**

v.

**NORTH DAKOTA STATE PERSONNEL BOARD, Defendant and Appellee.**

**Civ. No. 10536.**

Supreme Court of North Dakota.

Feb. 23, 1984.

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by James S. Hill, Bismarck.

Kathryn L. Dietz, Asst. Atty. Gen., Bismarck, for defendant and appellee; argued by Kathryn L. Dietz, Bismarck. Appearance by Marilyn Foss, Asst. Atty. Gen., Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by Howard Hammond from a judgment of the District Court of Burleigh County affirming a decision of the State Personnel Board (the Board) sustaining Hammond's termination as Chief Chemist of the State Laboratories Department. We reverse and remand for a redetermination by the Board.

Hammond, an employee of the State of North Dakota for over 42 years, was fired on March 31, 1982, by the department director, Charlene Seifert. Hammond appealed to the Board, which sustained his termination. Hammond then appealed the Board's decision to the district court which dismissed the appeal for lack of subject matter jurisdiction. In *Hammond v. North Dakota State Personnel Board*, 332 N.W.2d 244 (N.D.1983), this Court reversed the district court's dismissal and remanded for a determination of Hammond's appeal on its merits. Hammond has now appealed from the district court's judgment affirming, on its merits, the Board's decision to sustain Hammond's termination.

A formal hearing was held on Hammond's appeal to the Board during May 14, 15, and 17, 1982, before Peg Ralston, Director of the Central Personnel Division, who was appointed by the Board as the hearing examiner for the case. At the hearing, Hammond offered into evidence, without objection, portions of the State of North Dakota Personnel Policies Manual (the Manual). The Manual contains provisions setting forth the grounds upon which a classified state employee can be terminated. It is undisputed that Seifert, the hearing examiner, and the Board acted under the provisions of and in accordance with the rights and procedures set forth in the Manual.

We take judicial notice that no portion of the Manual has been published in the North Dakota Administrative Code.

Consequently, it is questionable whether or not the Manual provisions have been properly promulgated as agency rules. *See,* Section 28–32–03, N.D.C.C.; *See also, Hammond v. North Dakota State Personnel Board,* 332 N.W.2d 244 (N.D.1983) (Justice VandeWalle specially concurring). However, that issue has not been raised or briefed by either party. Irrespective of whether or not the Manual provisions constitute validly promulgated agency rules, we conclude that they are binding as a part of the employment relationship between the State Laboratories Department and Howard Hammond. The Manual, which was published and implemented by the Central Personnel Division, was held out by the State as providing the "policy and procedure" for state employees in their employment relationships with state agencies.

Through Executive Order No. 1981–10, Governor Allen I. Olson ordered:

"[T]hat agencies headed by a gubernatorial appointee adhere to and follow the North Dakota Personnel Policies to provide fair, equitable, and uniform treatment to all classified employees. This shall include the administrative statewide appeal mechanism which attempts to resolve bona fide employee complaints at the lowest possible level."

The State, and more specifically the State Laboratories Department in this case, having promulgated the Manual provisions as its personnel policy and procedure, must be held accountable under those provisions in its employment relationship with Howard Hammond. *See, Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn. 1983); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), *DeFrank v. County of Greene,* 50 Pa.Commw. 30, 412 A.2d 663 (1980). *See also, Zimmerman v. Minot State College,* 198 N.W.2d 108 (N.D.1972).

In *DeFrank, supra,* Greene County asserted that its personnel manual did not operate to establish employee rights with regard to dismissals from employment because the manual, promulgated by a past administrator, had not been adopted or ratified by any formal action of the county commissioners. In holding that the county was estopped from denying the validity of the manual and its binding effect on the county with regard to its employment relationships, the Commonwealth Court of Pennsylvania succinctly explained its rationale with which we agree:

"We believe that an employee's expectation of the operative validity of a document is fully reasonable when that document is held out by her superiors, to both the employee and the state, as an embodiment of the personnel policy of the employer. To allow a political entity to represent to its employees, through its chief administrators, their 'right to a hearing' and an assurance of 'job security', and then to permit that entity to disavow those words of entitlement when an employee takes those words at their face value, would violate any conception of fundamental fairness. To reject an estoppel here would amount to placing our imprimatur upon an inequitable manipulation of employees' legitimate expectations as to the stated terms and conditions of their relationship with their employer." 412 A.2d at 666–667.

We conclude in this case that the provisions of the Manual, under which the parties have voluntarily operated, provide the standard by which Hammond's termination must be reviewed. With regard to that standard, the relevant provisions of the Manual, at the time of Hammond's dismissal, read:

"8–4–1 The appointing authority may dismiss an employee for inefficiency, insubordination, misconduct, or other just cause. A written statement of reasons for the dismissal shall be submitted to the employee. A permanent employee shall have the right to appeal.

* * * * * *

"9–4–11 'Cause' means that taking disciplinary action is for substantial reasons related to the employee's job duties, job performance or working re-

lationships and the action taken is appropriate."

Thus, to sustain Hammond's dismissal, the Board was required to determine whether or not there was just cause as provided for and defined by the Manual.

In her termination memorandum, dated March 31, 1982, Seifert stated the reasons for Hammond's dismissal which we summarize as follows:

(1) "... unable to answer basic and elementary chemical questions relating to instrumentation in the laboratory area.... Paramount is his lack of basic skills in order to function as a Chief Chemist and his inability to learn those skills."

(2) Inappropriate "attitude toward management" and "destructive, uncooperative, disloyal attitude...." Inability "to function as an effective supervisory team member." Failure "to comply with management's wishes and directives to function as efficiently as possible in the position as chief Chemist."

(3) Failure to develop into a "loyal, cooperative, productive employee despite repeated opportunities to do so."

(4) "[P]oor attitude and poor performance have seriously hampered the overall operation of the Laboratories Department."

It was the responsibility of the Board to make findings as to whether or not the reasons for dismissal given by Seifert were supported by the evidence and to enter a conclusion as to whether or not the reasons supported by the evidence constituted just cause.

■ Before the Board made its decision on this case, Hammond requested Board member Lieutenant Governor Sands to recuse himself from acting in the case because of a conflict of interest. Sands refused to do so. On appeal, Hammond asserts that Sands should not have acted in this case as a member of the Board because, at the time the Board acted, Sands was also the acting chairman of the State Laboratories Commission which oversees the director of the State Laboratories Department and has, in effect, the power to hire and fire the director. Hammond asserts that there was a conflict of interest between Sands' position as acting chairman of the State Laboratories Commission while at the same time acting as a member of the Board with the responsibility of evaluating Hammond's termination by Director Seifert. We conclude that Hammond was not entitled to have Sands recuse himself as a member of the Board under the circumstances. The fact that Sands, acting as a member of the State Laboratories Commission, had authority to oversee the actions of Director Seifert does not, without more, result in a conflict of interest, which would disable him from making a fair and impartial decision regarding the director's dismissal of a department employee.

■ On appeal, Hammond asserts that the procedures utilized by the Board in arriving at its decision to sustain Hammond's dismissal did not afford him the minimum requirements of a fair hearing to which he was entitled under the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. We agree.

Hammond's hearing, involving three days of testimony and resulting in over 900 pages of transcript, was conducted before a hearing examiner with no members of the Board present at any time. The Board rendered its decision approximately one week following the conclusion of the hearing. Although recorded tapes of the hearing were available to the Board prior to the date of its decision, written transcripts of the proceedings were not prepared until after the Board had acted. On June 21, 1982, approximately one month after the Board's decision, it held a special meeting to consider Hammond's request for a rehearing. It is evident, upon reviewing the transcript of that meeting, that the Board had followed a policy, in rendering its initial decision, of basing its decision solely upon the hearing examiner's report and recommendation, believing that it was both inappropriate and unnecessary to review or

consider the evidence, testimony and exhibits, presented at the hearing. With regard to that policy, the relevant dialogue at the June 21, 1982, meeting between, Board member Floyd Case and the hearing examiner is as follows:

"*Case:* ... we've had other cases come before us and we followed the ·procedures then as we did in this instance wherein the factfinding officer gathers information, reports what they see to be the pertinent facts to the Board, give us a recommendation, and we make a decision on it. As I recall, we've not ever been given verbatim transcripts of any hearings or testimonial sessions that have gone on in the factfinding process. Am I correct in that, Peg?

"*Ralston:* That's correct. You have never listened to any record—you've listened to a report by the hearings officer.

\*    \*    \*    \*    \*    \*

"*Case:* ... I think though that it's a matter of our policy and procedure as to what our duties and responsibilities are as members of the personnel board. As I understand it, our policy says that we will hear from the factfinding officer and will make a decision. Now in previous cases the information brought forth by the factfinding officer in the form of the officer's report is all we've had and that's true; that's where this case is different. I had a question in my mind as to whether we should've received anything at all from Mr. Hammond's attorney or the Attorney General's Office or any other place. I saw it as our responsibility to become familiar with the factfinder's report and the factfinder's recommendation and that everything else was outside of anything I was going to be concerned with by our past practice. We did have all that information, that's true; and to have it, in my judgment, wasn't valuable because that was a matter of opinion on the part of the writer. And I frankly didn't pay any attention to it. I did pay attention to what the factfinder's report was and said and recommended because it's our policy to make

our decisions on the basis of that report. Solely on that report."

We believe that a fair interpretation of the foregoing discussion supports a conclusion that the Board misconstrued its responsibility in this case. By following its past policy and practice of rendering decisions based solely upon a review of the hearing examiner's report and recommendation, the Board acted in derogation of its responsibility to review and interpret the evidence presented in the case. By operating on the mistaken view, as expressed by Mr. Case, that the Board members were not to examine the evidence, the Board denied Hammond the decision-making process to which he was entitled on appeal.

The following statements of Board member Dennis Goetz at the June 21, 1982, meeting indicate that even if the policy of the Board had been to examine the evidence there was insufficient time for Board members to do so in this case:

"*Goetz:* ... I think we have to answer that question today—if there was sufficient time for us to make appropriate judgements on this case during our May 25 meeting.

\*    \*    \*    \*    \*    \*

"*Goetz:* ... Little direction was given to me in regard to what purpose for that information being made available to me was going to make in terms of this case. Also, it was very hard to review all that information. It was a very extensive amount of material on a short notice when we did not receive a copy of the findings of fact less than 24 hours before the meeting, board meeting itself.... I felt that it was because as we were very pressed for time in making our decision. Whether or not that influenced us, I felt I, I was very pressed on that date, but I think we each individually have to decide whether or not we had that kind of sufficient time for preparation.

\*    \*    \*    \*    \*    \*

"*Case:* Just a comment on what Dennis has just said, and ·everything he said is true, as far as I can recall."

The Board had a duty, based upon the evidence submitted by the parties, to determine whether or not Hammond's dismissal was based upon just cause. We conclude that the procedures utilized by the Board denied Hammond his right to a decision by the Board based upon a review of the record by the Board members. We conclude, therefore, that it is necessary to remand this case to the Board for a redetermination based upon the record.

■ On appeal to this Court, Hammond has raised additional issues relating to whether or not the Board's decision to sustain his termination should be upheld. In view of our remand to the Board for a redetermination, it would be inappropriate to discuss or resolve those issues on this appeal. By failing to utilize an appropriate decision-making process, the Board has, in effect, failed to render a valid determination in this case for us to review under the standards provided in Chapter 28–32, N.D. C.C. Under these circumstances, it would be premature and unfair to either party for us to determine whether or not the record would support an affirmance or a reversal of Hammond's termination without having before us a Board determination based upon a valid decisional process.

In accordance with this opinion, the judgment of the district court is reversed and the case is remanded with instructions that the members of the Board review the evidence submitted and issue a redetermination, with findings and conclusions, based upon their review of the record.

SAND and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the result reached in the majority opinion written for the court by the Chief Justice. I am, however, concerned that the opinion may be construed as requiring that as a matter of law all members of an administrative agency or, for that matter, any court, which uses a hearing officer, referee, or master, read each word of the record and examine each exhibit introduced before arriving at a con-

clusion as to the disposition of the issues before them. The opinion should not be so construed. I agree with the majority opinion that the Board should review and interpret the evidence. I also agree that in so doing one or more members of the Board may wish to review in detail all of the testimony and the exhibits introduced. Insofar as the record may reflect that the Board believes it is improper for the Board members to examine the testimony and evidence independent of the report of the hearing officer, I agree with the majority opinion. It certainly is not improper for them to do so. On the other hand, I do not believe it is mandatory that each member of the Board do so before arriving at a determination. What is required is that the Board consider and appraise the evidence. That obligation may be discharged in various ways other than reading a verbatim transcript of the testimony. See 3 Davis, *Administrative Law Treatise* (2d Ed. 1980).

At the time the Board reviews the evidence I believe it should also consider whether or not there was an undue restriction by the hearing examiner of Hammond's right to examine and cross-examine witnesses, i.e., whether or not evidence was excluded which would have been significant to the Board's decision.

PEDERSON, Justice, concurring in part, dissenting in part.

I concur in the remand for further consideration by the State Personnel Board and in most of the law as explained by Chief Justice Erickstad. I do not agree that every member of every board or commission that performs quasi-judicial functions must independently examine every bit of evidence and consider every argument presented to a hearing officer, especially when the hearing officer's recommendations are adopted.

The Kansas Appellate Court, in *Matter of University of Kansas Faculty*, 2 Kan. App.2d 416, 581 P.2d 817, 823 (1978) held:

"Where, as here, an administrative body acts in a quasi-judicial capacity, constitutional requirements of due process are applicable to proceedings had before it. [Cite omitted.] There is no claim that the procedure before the hearing officer was in any way defective. Nor is there a claim that the board could not decide the case without being present when the evidence was presented. Due process is not violated by such procedure provided the deciding authority considers and acts on the evidence received. [Cite omitted.] In apprising itself of the evidence, the deciding authority is not precluded from obtaining the aid of competent assistants who may sift and analyze the evidence. [Cite omitted.] Such a task is performed by the hearing officer under the board's procedures. [Cite omitted.]"

In a California case where it was argued that "one who decides must hear" under the California Constitution, it was held:

"In this case, due process is supplied by the hearing officer's taking of evidence, his findings and proposed decision, the decision of the board based on the findings and proposal, and by review by the court ... followed by this appeal." *Fichera v. State Personnel Board,* 217 Cal.App.2d 613, 32 Cal.Rptr. 159, 162 (1963).

Ordinarily, board members are not subject to cross-examination as to the extent of their examination of the record but, when the board is rejecting the hearing officer's recommended decision, they must explain the grounds therefor. See 73A CJS Public Administrative Law and Procedure § 141; 2 Am.Jur.2d Administrative Law § 427 and following.

Perhaps our statutes and agency policies need some attention. Meaningless procedures and reviews do not promote employee-employer harmony.