1999 ND 198

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Petitioner and Appellee,**

v.

**CENTRAL PERSONNEL DIVISION, Office of Management and Budget, Office of Administrative Hearings, Respondents**

and

**Anthony J. Schumacher, Respondent and Appellant.**

No. 990085.

Supreme Court of North Dakota.

Oct. 20, 1999.

Steven L. Latham, Wheeler Wolf, Bismarck, ND, for respondent and appellant.

Tag C. Anderson, Assistant Attorney General, Bismarck, ND, for petitioner and appellee.

KAPSNER, Justice.

[¶ 1] Anthony J. Schumacher appealed from a district court judgment which reversed an Administrative Law Judge's order requiring reinstatement of Schumacher's employment with the Department of Transportation. Because the Administrative Law Judge had no authority to order reinstatement, we affirm the district court's judgment.

I.

[¶ 2] Anthony Schumacher was employed by the Department of Transportation ("DOT") as an equipment operator and supervisor in Edgeley, North Dakota. On December 6, 1995, Schumacher sold some DOT scrap metal and received a check from the recycling center for $57.55 payable to him. The next day, he deposited those proceeds in his personal bank account.

[¶ 3] Early in 1998, the DOT learned of allegations of misuse and misappropriation of property at the Edgeley site. The DOT requested the Bureau of Criminal Investigation investigate the allegations. On February 17, 1998, Schumacher told an investigator for the Bureau of Criminal Investigation he had deposited the scrap metal proceeds in his personal account, intending to purchase tools and equipment for the DOT. Schumacher further asserted he had bought a jack for the DOT. Investigators later discovered Schumacher had purchased the jack on February 17, 1998. The Bureau of Criminal Investigation gave its report to the LaMoure County State's Attorney; the State's Attorney determined there was insufficient evidence to charge Schumacher with a crime.

[¶ 4] On April 7, 1998, the DOT sent a pre-termination letter to Schumacher. In the letter, the DOT alleged the following: Schumacher had sold DOT scrap metal and placed the proceeds in his personal account; Schumacher told an investigator for the Bureau of Criminal Investigation he had not commingled the proceeds with his personal funds and had used the proceeds, as he initially intended, to purchase a jack for the DOT; Schumacher had commingled the proceeds with his personal funds and had purchased a jack for the DOT on the same day he had talked with the investigator from the Bureau of Criminal Investigation. The DOT stated the record indicated Schumacher committed a theft of department property and thus cause existed to terminate his employment. The DOT indicated Schumacher had an opportunity to respond to the allegations before a final decision was made to terminate his employment. Schumacher was given until April 13 to submit any written statements or other documentation which would explain or disprove the allegations. The letter notified Schumacher he could review his personnel file and provided a copy of the DOT's grievance and complaint policy and a guide for administrative appeals to the Central Personnel Division.

[¶ 5] Three days later, Schumacher responded by letter. He asserted he had deposited the proceeds in a separate account for the purpose of buying tools for the DOT. He also asserted he never intended to keep the proceeds for himself and he was willing to pay back the scrap metal proceeds plus interest. In addition, Schumacher alleged the scrap metal incident was not the only reason for his termination. He asserted he was "being railroaded" by two DOT employees because one of the two employees wanted Schumacher's supervisory position. Finally, Schumacher emphasized the conclusion of the LaMoure County State's Attorney re-

garding the insufficiency of evidence for prosecution.

[¶ 6] On April 15, the DOT terminated Schumacher's employment. In the termination letter, the DOT noted it had reviewed Schumacher's letter, the evidence, and Schumacher's personnel file. The DOT explained there was no reason to change its proposed termination based on Schumacher's theft of department property. The letter explained Schumacher had a right to an internal DOT grievance procedure and a right to appeal his termination to the Central Personnel Division and instructed Schumacher on the way to start the appeal process.

[¶ 7] Schumacher waived the internal grievance procedure and appealed to the Central Personnel Division, and on July 8, 1998, a hearing was held before an Administrative Law Judge (ALJ). The ALJ found Schumacher's explanation that the proceeds were intended to buy tools for the DOT was "disingenuous" and his act "amount[ed] to theft." However, the ALJ emphasized it was "a one-time theft of a small amount of money" and Schumacher's performance otherwise had been exemplary for fifteen years. The ALJ accordingly concluded there was no cause for Schumacher's termination and progressive discipline must be used. The ALJ ordered Schumacher's reinstatement.

[¶ 8] The DOT appealed the ALJ's decision, and the district court reversed. Reasoning the theft of over fifty dollars in government property by an employee is a serious offense which is detrimental to the discipline and efficiency of the DOT, the district court found the ALJ's decision was not in accordance with the law and the ALJ's findings of fact did not support the ALJ's conclusions of law. Schumacher appealed.

## II.

[¶ 9] This appeal is governed by N.D.C.C. § 54–44.3–12.2 (1995). Under N.D.C.C. § 54–44.3–12.2 (1995), a nonprobationary employee in the classified service [1] may appeal to the Central Personnel Division from certain decisions of an employer, including an employer's decision to dismiss the employee. The Central Personnel Division must certify an employee's appeal and request that the Director of the Office of Administrative Hearings designate an administrative hearing officer to "conduct the hearing and related proceedings, including receiving evidence and preparing findings of fact, conclusions of law, and issuing a final decision." [2] The decision of the designated hearing officer is a final decision. See Blanchard v. North Dakota Workers Compensation Bureau, 1997 ND 118, ¶¶ 14, 16, 565 N.W.2d 485 (N.D.1997) (reasoning an ALJ was authorized to issue a final decision because the statutory scheme "manifests a legislative intent that an ALJ's decision is a final order" and noting in a hearing under N.D.C.C. § 54–44.3–12.2 the hearing officer issues a final decision). Section 54–44.3–12.2, N.D.C.C. (1995), indicates

---

1. Under N.D.C.C. § 54–44.3–20, all positions in the state service are included in the classified service except certain listed positions, none of which are applicable here.

2. Prior to 1995, N.D.C.C. § 54–44.3–12.2 did not expressly provide for the Central Personnel Division's receipt and certification of employee appeals or for its request for an administrative hearing officer from the Office of Administrative Hearings. Rather, the statute merely indicated the Central Personnel Division "shall cooperate with and assist the various departments, agencies, and institutions of the state in the development and implementation of basic agency grievance procedures and

a statewide appeal mechanism." We thus construed N.D.C.C. § 54–44.3–12.2 as "authorizing the Central Personnel Division to include, as part of the statewide appeal mechanism, a review of personnel actions by the State Personnel Board under the Board's general authority [under N.D.C.C. § 54–44.3–07] 'to foster and assure a system of personnel administration in the classified service of state government' and to 'hold such hearings' as are necessary to perform the functions vested in the Board by law." Little v. Spaeth, 394 N.W.2d 700, 702 (N.D.1986) (citation omitted).

N.D.C.C. ch. 28–32 governs the appeal to the district court. Under N.D.C.C. § 28–32–21, an employee may appeal from the district court decision to this Court.

## III.

[¶ 10] In *Jacobs v. North Dakota State Personnel Bd.*, 551 N.W.2d 779, 781 (N.D.1996), we interpreted the proper standard of review prescribed by N.D.C.C. ch. 28–32 for employment cases brought under N.D.C.C. § 54–44.3–12.2.[3] Accordingly, our review is limited to whether the findings of the designated administrative hearing officer are supported by a preponderance of the evidence, the officer's conclusions of law are supported by the findings of fact, and the decision is in accordance with the law. *Id.* In reviewing the decision, we do not make independent findings or substitute our judgment for that of the hearing officer; instead, we determine whether a reasoning mind could have reasonably determined the factual conclusions were supported by the weight of the evidence. *Id.*

## IV.

[¶ 11] The arguments raised by the parties in this case create two issues appropriate for review. The first is whether the preponderance of the evidence supports the ALJ's finding Schumacher committed a theft. If that finding is supported by the preponderance of the evidence, the second issue is whether that finding supports the conclusion Schumacher should not have been dismissed.

### A.

[¶ 12] Schumacher suggests the preponderance of the evidence does not support the finding he committed a theft which would allow the DOT to terminate his employment without engaging in progressive discipline. Because the ALJ ruled in his favor, Schumacher does not expressly argue the evidence does not support the ALJ's finding he committed a theft. However, Schumacher asserts the ALJ did not find he "committed a criminal act of theft and indeed, if such finding of fact had been made it would have been clearly erroneous based upon the conclusion of the States Attorneys Office that there is insufficient evidence to justify a criminal charge." Schumacher's argument misstates the required finding.

[¶ 13] Chapter 4–07–19 of the North Dakota Administrative Code governs disciplinary actions for state employees in classified positions. A regular employee may be disciplined only for cause. N.D. Admin. Code § 4–07–19–03. Schumacher was a regular employee under this chapter. "Cause" is "conduct related to a regular employee's job duties, job performance, or working relationships that is detrimental to the discipline and efficiency of the service in which the employee is or was engaged." N.D. Admin. Code § 4–07–19–02(1).[4]

3. *Jacobs* involved the pre–1995 version of N.D.C.C § 54–44.3–12.2 and thus, the employee appealed to the State Personnel Board, rather than the Central Personnel Division. However, our standard of review of a Central Personnel Division disciplinary decision is the same as our review of a similar State Personnel Board decision. N.D.C.C. ch. 28–32 governs the review of decisions by both entities. The State Personnel Board is an agency and therefore is necessarily subject to N.D.C.C. ch. 28–32. *See Hammond v. North Dakota State Personnel Bd.*, 332 N.W.2d 244, 247 (N.D.1983) (noting the State Personnel Board is separate and distinct from the Central Personnel Division and concluding the State Personnel Board is an administrative agency).

N.D.C.C. § 54–44.3–12.2 (1995) indicates N.D.C.C. ch. 28–32 governs review of cases appealed from the Central Personnel Division.

4. Our caselaw provides some examples of conduct constituting "cause" for discipline. *See Jacobs v. North Dakota State Personnel Bd.*, 551 N.W.2d 779, 782 (N.D.1996) (upholding a demotion for cause where the employee failed to complete work in a timely manner); *Berdahl v. North Dakota State Personnel Bd.*, 447 N.W.2d 300, 303–04 (N.D. 1989) (upholding an employee's dismissal that was based on the employee's personal use of State vehicles, his conducting personal business during Department hours, his creation of

[¶ 14] In addition, chapter 4–07–19 requires the use of progressive discipline for regular employees in most instances. " 'Progressive discipline' means the disciplinary actions imposed to correct a regular employee's behavior, beginning with a less severe appropriate action and progressing to a more severe appropriate action, for repeated instances of poor job performance or for repeated violations of the same or similar rules or standards." N.D. Admin. Code § 4–07–19–02(4). However, progressive discipline is not required in all cases. Section 4–07–19–04, N.D. Admin. Code, provides as follows:

> Progressive discipline must be used to correct a regular employee's job performance problems or for a violation of rules or standards, except when an infraction or a violation of a serious nature is committed including insubordination, theft, falsification of pay records, assaulting a supervisor or coworker, patient or client, and for which the imposition of less severe disciplinary action would be inappropriate.

■ [¶ 15] Here, the ALJ properly found Schumacher's actions amounted to a theft. At the hearing before the ALJ, Schumacher admitted he sold the DOT scrap metal and placed the proceeds in his personal account. Approximately two years after the scrap metal sale, he purchased a jack for the DOT. Schumacher purchased the jack on the same day an investigator from the Bureau of Criminal Investigation interviewed him regarding allegations of misuse and theft of DOT property. Accordingly, the evidence before the ALJ was such that a reasoning mind could have reasonably determined Schumacher committed a theft of DOT property. *See Jacobs v. North Dakota State Personnel Bd.,* 551 N.W.2d 779, 782 (N.D.1996).

■ [¶ 16] Schumacher contends a finding he committed a criminal act is necessary to apply the theft exception to progressive discipline under N.D. Admin. Code § 4–07–19–04. In support, he emphasizes there was no finding he committed a criminal act and the conclusion of the LaMoure County State's Attorney there was insufficient evidence to pursue criminal action against him.

[¶ 17] Section 1–02–02, N.D.C.C., provides "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." Here, the plain language of N.D. Admin. Code § 4–07–19–04 indicates only a finding of theft is required; the statute does not refer to a criminal prosecution or a conviction or a finding of a criminal act.[5] Rather the statute merely refers to "an infraction or a violation of a serious nature." The additional requirement of a conviction cannot be added to the plain language of N.D. Admin. Code § 4–07–19–04. *See Peterson v. Heitkamp,* 442 N.W.2d 219, 221 (N.D.1989) (providing "[w]hen a statute is unambiguous, it is improper for the court to attempt to construe the provisions so as to legislate that which the words of the statute do not themselves provide"); *Haggard v. Meier,* 368 N.W.2d 539, 541 (N.D. 1985) (reasoning "it is improper for the courts to attempt to construe the provi-

an unacceptable public image, and his abuse of sick leave benefits); *Choukalos v. North Dakota State Personnel Bd.,* 429 N.W.2d 441, 443–44 (N.D.1988) (upholding the State Personnel Board's determination cause existed where an employee of the North Dakota Insurance Commissioner's Office failed to consistently apply department policies, failed to communicate department policies to insurance companies, and failed to alert superiors of important regulatory concerns).

5. Findings of theft without criminal prosecutions or convictions occur in other civil proceedings. For instance, theft is often found without a criminal conviction or evidence satisfying the burden of proof required in criminal cases in proceedings involving insurance coverage for the theft of property. *See Hoff v. Minnesota Mut. Fire and Cas.,* 398 N.W.2d 123 (N.D.1986); *Lovas v. St. Paul Ins. Cos.,* 240 N.W.2d 53 (N.D.1976); *Conlin v. Dakota Fire Ins. Co.,* 126 N.W.2d 421(N.D.1964).

sions so as to legislate additional requirements or proscriptions which the words of the provisions do not themselves provide"). If a criminal conviction was required for the theft exception to apply, one could logically assume a criminal conviction for the other exceptions under N.D. Admin. Code § 4–07–19–04 would be required. However, no crime exists for insubordination. Thus it is clear from the statute that the stated exceptions are themselves violations of a serious nature which are detrimental to the employer's interest. The theft exception under N.D. Admin. Code § 4–07–19–04 does not require a criminal conviction in order to terminate employment for cause.

■ [¶ 18] Further, although the ALJ characterized Schumacher's actions as "a one-time theft of a small amount of money in nearly fifteen years of otherwise apparent good service," we conclude N.D. Admin. Code § 4–07–19–04, by its plain meaning, does not require repeated thefts or embezzlement. Section 4–07–19–04, N.D. Admin. Code, recognizes that an employee's theft of employer property is highly detrimental to employer discipline regardless of whether it is a one time theft or part of an embezzling scheme.

[¶ 19] We accordingly hold the preponderance of the evidence supports the ALJ's finding Schumacher committed a theft of department property.

### B.

[¶ 20] Schumacher also argues even if the ALJ properly found he committed a theft, her conclusion he should not be dismissed is supported by the findings. He alleges the Administrative Code allows the Central Personnel Division, through a designated ALJ, to determine whether an employee's dismissal was appropriate.

■ [¶ 21] A designated ALJ does have authority to determine whether an employee's dismissal was justified under the Administrative Code. *See Jacobs v. North Dakota State Personnel Bd.*, 551

N.W.2d 779, 781 (N.D.1996) (upholding a State Personnel Board's decision where the Board had applied the cause provisions of the Administrative Code and had determined there was cause for the employment action); *Hammond v. North Dakota State Personnel Bd.*, 345 N.W.2d 359, 362 (N.D. 1984) (noting "[i]t was the responsibility of the [State Personnel] Board to make findings as to whether or not the reasons for dismissal given by [the employer] were supported by the evidence and to enter a conclusion as to whether or not the reasons supported by the evidence constituted just cause"); N.D.C.C. § 54–44.3–12.2 (1995) (authorizing a properly designated administrative hearing officer "to conduct the hearing and related proceedings, including receiving evidence and preparing findings of fact, conclusions of law, and issuing a final decision" where a regular employee has appealed the employer's decision to dismiss the employee). However, here the ALJ improperly applied the Administrative Code's provisions regarding "cause." Specifically, she indicated no cause for termination existed under N.D. Admin. Code § 4–07–19–03. She stated "[p]ursuant to N.D. Admin. Code § 4–07–19–03, Mr. Schumacher's employment could only be terminated for cause." After referring to the definition of "cause" under N.D. Admin. Code § 4–07–19–02(1), she noted "[t]heft of state property is conduct which certainly can be detrimental to an employer's operations." The ALJ then indicated "[t]he circumstances do not show that Mr. Schumacher's actions disrupted agency operations" and "this one incident does not rise to the level of destroying Mr. Schumacher's integrity." Reasoning "the Department failed to establish cause for terminating [ ] Schumacher's employment," she concluded a less severe form of discipline than dismissal was necessary. Whether cause exists is a question of law fully reviewable by this Court. *See Olson v. Job Service North Dakota*, 379 N.W.2d 285, 287 (N.D.1985) (providing a question of law is fully reviewable on appeal). It is clear that the ALJ misinterpreted the

question of cause by inserting a requirement that the employee's action disrupt an agency's operations. No such requirement exists.

[¶ 22] Cause is required for any form of discipline, not just dismissal. If there were no cause under N.D. Admin. Code § 4–07–19–03, Schumacher should not have been disciplined in any way. However, the ALJ conceded Schumacher committed a theft and should be disciplined. Further, N.D. Admin. Code § 4–07–19–04 recognizes employee theft is detrimental to the employer's interest and indicates theft is a serious infraction for which dismissal is appropriate. Thus cause for discipline necessarily exists when an employee commits a theft.

[¶ 23] In support of the ALJ's conclusion he should not be dismissed, Schumacher points to his exemplary employee record and contends it should be considered in the determination of whether his termination was justified. Although the ALJ also emphasized Schumacher's good record, such emphasis was improper.

[¶ 24] An employee's past performance is irrelevant in determining whether the employee committed a theft. Once it is determined an employee committed a theft, N.D. Admin. Code § 4–07–19–04 allows the employer to dismiss the employee. The employer, in its discretion, may choose to consider the employee's past performance in deciding whether to dismiss the employee. But having found that a theft occurred, an ALJ reviewing a termination decision has no authority to overrule an agency's determination to dismiss the employee.

[¶ 25] In finding Schumacher committed a theft of department property and concluding the DOT could not dismiss Schumacher, the ALJ improperly interpreted the progressive discipline requirement of the Administrative Code. In reaching her conclusion, the ALJ reasoned progressive discipline requires a case-by-case analysis and thus all employees who commit a particular type of infraction should not be dealt "a preordained outcome." Then analyzing Schumacher's case, the ALJ determined dismissal of Schumacher was inappropriate. The ALJ emphasized Schumacher's good record, the minimal damage his act apparently caused the DOT, and his "amenab[ility] to remediation."

[¶ 26] However, as noted N.D. Admin. Code § 4–07–19–04 allows an employer to dismiss an employee who commits a theft. Section 4–07–19–04, N.D. Admin. Code, does not require a case-by-case analysis in instances of theft; rather, the statute expressly provides progressive discipline is not required when a theft has occurred. The employer therefore does not have to "begin[ ] with a less severe appropriate action and progress[ ] to a more severe appropriate action, for repeated instances of poor job performance or for repeated violations of the same or similar rules or standards." N.D. Admin. Code § 4–07–19–02(4). The ALJ had no authority under the express provisions of the governing rule to impose progressive discipline or to order reinstatement.

V.

[¶ 27] Because the ALJ properly found Schumacher's actions amounted to a theft but concluded his termination was not justified, we hold the ALJ's findings of fact do not support her conclusions of law and the ALJ's decision is not in accordance with the law. Under N.D. Admin. Code § 4–07–19–04, Schumacher's theft clearly allowed the DOT to dismiss Schumacher. We therefore affirm the district court's reversal of the ALJ's decision.

[¶ 28] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.