2007 ND 136

**Jamey M. STEPHENSON, Appellee,**

v.

**The Honorable John HOEVEN, as Governor of the State of North Dakota, and as Commander in Chief of the North Dakota National Guard, and Major General David Sprynczynatyk, Adjutant General of the North Dakota National Guard, Appellants.**

No. 20070055.

Supreme Court of North Dakota.

Aug. 22, 2007.

Monty G. Mertz, Mertz Law Office, Fargo, N.D., for appellee.

Douglas Alan Bahr, Solicitor General, Office of Attorney General, Bismarck, N.D., for appellants.

MARING, Justice.

[¶ 1] John Hoeven, as Governor of North Dakota and commander in chief of the North Dakota National Guard, and Major General David Sprynczynatyk, the Adjutant General of the North Dakota National Guard (collectively referred to as the "Adjutant General"), appeal from a district court judgment reversing a decision to separate Jamey Stephenson from the North Dakota National Guard. We conclude the Adjutant General's decision is not appealable, and we reverse the judgment denying the Adjutant General's motion to dismiss Stephenson's appeal.

I

[¶ 2] In 2001, Stephenson was accepted for fighter pilot training in the North Dakota Air National Guard. Stephenson's air national guard service agreement required him to remain a member of the Air National Guard of the United States for ten years after graduation from Undergradu-

ate Pilot Training ("UPT"). It further provided that "entry into undergraduate pilot or navigator training results from a requirement with [his] parent ANG unit for a combat ready aircrew member, and that if for any reason [his] performance during training results in judgment by competent authority that [he was] not suited to pilot or navigate [his] unit's mission aircraft, [he] may be separated from the Air National Guard. However, [he] may be transferred to the USAFR to fulfill the non-expired portion of [his] military service obligation."

[¶ 3] Stephenson completed UPT but was not selected to continue to Introduction to Fighter Fundamentals ("IFF") training. Stephenson claimed he successfully completed UPT but some of his scores had been incorrectly reported to his air guard unit in Fargo, and he was not permitted to continue IFF training with his unit because he had filed a complaint with his superiors. According to the commander of the 119th Fighter Wing of the North Dakota Air National Guard, Stephenson was not allowed to continue his training because of low scores in UPT and he was advised to seek a position with another guard unit that could utilize his flying skills, to find a line officer position with another unit, or to resign his commission.

[¶ 4] In March 2005, Stephenson was sent a letter addressing his failure to find a position in another unit, which provided:

1. It has been brought to my attention that you passed Undergraduate Pilot Training (UPT) in January 2004, but were subsequently not selected for Fighter Aircraft Training. At that time you were directed to find a new unit that could use your services. No specific time frame was given in regard to this order, however, our expectations were that you should have the initiative and

drive to complete this order and find a unit that could utilize your skills. We are now far beyond a reasonable time frame for this to have been accomplished. We have had numerous student pilots who were in identical shoes who have found new units to transfer to in a few weeks or maybe a month or two at most. You have had 14 months and the situation is still unresolved. The matter was discussed with you numerous times, and it is clear that you have done little or nothing to bring this matter to conclusion.

2. More specifically it was pointed out to you that you had options to:

(1) Comply with the January 04 order and to find yourself an Air National Guard Unit that can utilize your skills.

(2) Find a line officer position with an Air National Guard, United States Air Force Reserve, or Active Duty United States Air Force unit. Be advised a line officer position is not being offered to you by the North Dakota Air National Guard (NDANG) at this time.

(3) Resign your commission

3. In light of the above, I am informing you that I intend to begin Administrative Discharge procedures under [Air Force Instruction]36–3209 Para. 2.34, *Substandard Performance of Duty*. You have until the close of business 15 April 2005 to provide written documentation to my desk indicating that one of the above choices has been complied with. If you fail to find a position or resign by that time, I will direct that the discharge process begin.

[¶ 5] In September 2005, a notification for involuntary discharge was sent to Stephenson, which provided:

1. I am recommending your discharge from the North Dakota Air National Guard of the United States and as a

Reserve of the Air Force for Substandard Performance of Duty, in accordance with AFI 36–3209, Chapter 2, para. 2.34 and Non-availability of Paid Status Space, in accordance with AFI 36–3209, Chapter 2, para. 2.25.8. Copies of the documents to be forwarded to the separation authority, The Adjutant General, to support this recommendation are attached.

2. My reason for this action is: On 1 Nov 02, you started in Undergraduate Pilot Training (UPT) at Columbus, MS. Due to your low MASS score you were not allowed to proceed to Introduction to Flight Fundamentals (IFF) course held at Moody, AFB. Upon notification that you would not progress to IFF, you were instructed to search for another position that could utilize your UPT skills. Memorandum dated Mar 29, 2005, received by you on Apr 1, 2005, instructing you to inquire with other units about slot availability and update your unit with any contacts and/or progress you had made. As of August 20, 2005 your unit has received no feedback on your progress or if you have found another position. Since you have failed to locate a paid status space we are forced to start involuntary separation procedures.

3. This action could result in your separation with an Honorable, or General Under Honorable Conditions discharge. I am recommending that you be separated with an Honorable discharge.

[¶ 6] Stephenson elected to proceed to an administrative discharge board. The Adjutant General appointed a board of officers to consider whether Stephenson should have his federal recognition withdrawn and whether he should be discharged from the North Dakota Air National Guard for substandard performance of duty and for nonavailability of paid status space. After a hearing, the board of officers found Stephenson should be discharged because he had performed in a substandard manner and due to "nonavailability of paid status space." The board of officers concluded the primary reason for discharge was substandard performance and recommended that Stephenson be "[d]ischarged from the Air National Guard and as a Reserve of the Air Force with his service characterized as Honorable."

[¶ 7] The board's proceedings were reviewed by a staff judge advocate, who found:

a. The board was properly appointed by the Adjutant General under the authority of the Secretary of the Air Force.

b. The respondent was properly notified of the board proceeding to include his right to military counsel or civilian counsel at his own cost. A Judge Advocate, qualified under Article 27(b)(1) of the UCMJ, represented the respondent.

c. The recorder, defense counsel, and board members were all in the Title 10 status for the hearing as required.

d. All testimony at the hearing was sworn properly and the respondent was properly advised of his rights under Article 31, UCMJ and his right to make an unsworn statement. The respondent elected to make an unsworn statement to the board through his counsel.

e. All board members were senior in grade to the respondent (all were Colonels O–6). The legal advisor was a Lt. Col. The recorder was as a Judge Advocate with the rank of Major.

f. The legal advisor, recorder, and defense counsel have all authenticated the record and certified that the sum-

marized transcript is a true and accurate record of the board proceeding.

g. The board was timely convened and completed its deliberations.

4. I have determined that the appropriate instructions have been followed by the board and other participants. The board of officers has made specific findings and has recommended that 1Lt. Jamey Stephenson be separated from the North Dakota National Guard and that his Federal Recognition be removed.

5. I find that the record of the proceeding, by a preponderance of the evidence, supports their findings and recommendation. The finding of substandard performance was supported by government exhibits and the live testimony of several officers.

[¶ 8] The board's recommendation for removal of Stephenson's federal recognition was forwarded to the National Guard Bureau and was returned with the following statement:

1. We reviewed the case involving 1Lt. Stephenson. The recommended removal of federal recognition (or administrative discharge) is not complete or legally sufficient.

2. A board hearing was held 5 Dec. 05 in Fargo, ND. We received the file on 10 Feb. 06 and a 26–27 Feb. 06 legal review noted it was complete and legally sufficient to forward to the SAF/PC with a recommendation for discharge, except for a problem. The board was not convened by the "Convening Authority," ANGRC/CC (see AFI 36–3209, paragraph 4.14 and Attachment 1). It was instead convened by the ND Adjutant General (see Government Exhibit # 3). The Respondent's Counsel objected to the hearing (see transcript at page 3). We checked and found the case was not properly convened. The ND TAG does not have authority to convene a federal recognition/discharge board.

3. Because the ND TAG did not have the authority to convene this board, the case file was returned.

[¶ 9] In August 2006, the Adjutant General issued a memorandum for Stephenson's administrative separation, addressing Stephenson's claims:

4. The decision to not send 1Lt. Stephenson to Phase II of UPT was not based on "failure" of Phase I, but was the command decision based on professional judgment that 1Lt. Stephenson did not have scores sufficiently high enough to become a successful fighter pilot. This is in fact fairly common; of the 10 individuals selected for UPT training since 2001, only 5 were allowed to go on to Phase II. The remaining five were still eligible to fly other aircraft and all, with the single exception of 1Lt. Stephenson, secured a position with another unit. When 1Lt. Stephenson entered into his service agreement he agreed in writing that "if for any reason my performance during training results in judgment by competent authority that I am not suited to pilot or navigate my unit's mission aircraft, I may be separated from the air National Guard." The unit made the professional judgment, based upon years of past experience and upon the recommendation of 1Lt. Stephenson's Phase I training squadron, that he had not developed the skill set that would permit him to be sent on to Phase II fighter pilot training.

Regarding the allegation that 1Lt. Stephenson has not been allowed to drill or perform any annual training, in late February of 2005 the Operations Group Commander had advised 1Lt. Stephenson to not attend drill. In April of 2005 a plan to resolve the situation was set in place where in 1Lt. Stephenson was to

work with an NGB representative directly to seek assistance in finding a flying position with another unit. After not finding a new position for a few months, 1Lt. Stephenson requested to drill again in late summer or early fall of 2005. He did perform subsequent UTAs and was paid in September, November and December of 2005. After the board proceeding, 1Lt. Stephenson has made *no* attempt to contact the unit to perform any drill or AT even though he was advised that was the appropriate avenue if he wished to drill or perform any annual training.

The separation of an officer from the Air National Guard requires an efficiency board "as provided by federal regulation" (NDCC 37–04–15). 1Lt. Stephenson's counsel references a North Dakota law requiring a 5 member board of officers. The only such statute referencing a board of officers is NDCC 37–04–17, which requires a 5 member board of commissioned officers before the Governor may place an officer on the retired list. There is no other statutory "board" requirement for separation of officers. In this case the Adjutant General is the appropriate conveying and separation authority for ANG Unique Separations under AFI 36–3209. Based on AFI 36–3209 and discussions with Air Force Reserve Personnel Center (Separations Division) the Adjutant General may direct separation from the ANG and transfer to the IRR for ANG Unique Separations.

. . .

5. Considering the matters raised by 1Lt. Stephenson, the entire record, and the recommendations of the chain-of-command, I find that 1Lt. Stephenson should be separated from the North Dakota Air National Guard and transferred to the Individual Ready Reserve (IRR). 1Lt. Stephenson will be issued an honor-able discharge. The sole basis for the discharge is AFI 36–3209, Chapter 2, ANG Unique Separations, Non–Availability of Paid Status Space.

The Adjutant General thereafter issued "Special Orders AA–86" under Air Force Instruction 36–3209, Chapter 2, Section 2C, paragraph 2.25, which relieved Stephenson from assignment with the 8119th Student Flight of the North Dakota Air National Guard on the basis of nonavailability of paid status space, issued him an honorable discharge from the North Dakota Air National Guard, and transferred him to the Individual Ready Reserve.

[¶ 10] Stephenson appealed the Adjutant General's decision to the district court under N.D.C.C. § 28–32–42(1) of the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. The Adjutant General moved to dismiss Stephenson's appeal, asserting the district court did not have jurisdiction because the Adjutant General's decision was issued under federal law that controls the review process. The Adjutant General argued the decision "was not issued pursuant to N.D.C.C. ch. 28–32[and] the challenged military personnel decision was regulated by the federal government." The Adjutant General claimed the district court lacked jurisdiction because the appeal was not from an adjudicative proceeding and military personnel decisions were nonjusticiable in civilian courts. Stephenson responded that the Adjutant General's decision was appealable and ultimately asked the court to deny the motion to dismiss and set a briefing schedule and date for oral argument.

[¶ 11] The district court denied the Adjutant General's motion to dismiss and decided the Adjutant General exceeded its authority in issuing Special Orders AA–86. The court said the National Guard is an administrative agency and rejected the Ad-

jutant General's argument that because Special Orders AA–86 was not issued as part of an adjudicative proceeding, the court lacked jurisdiction to review the order under N.D.C.C. § 28–32–42. The court said N.D.C.C. § 28–32–42 did not require an adjudicative proceeding to review Special Orders AA–86; rather, that statute only required "any proceeding" for review of the Adjutant General's order. The court explained *People to Save the Sheyenne River, Inc. v. North Dakota Dep't of Health*, 2005 ND 104, ¶ 22, 697 N.W.2d 319, allowed court review of an agency decision where there was "no adjudicative proceeding and preparation of findings of fact" and concluded Stephenson's appeal was reviewable under N.D.C.C. § 28–32–42. The court reviewed the Adjutant General's decision under the arbitrary, capricious, and unreasonable standard employed in *People to Save the Sheyenne River*, at ¶ 24. The court said most of Stephenson's claims were nonjusticiable, but his claim that the Adjutant General exceeded its authority in issuing Special Orders AA–86 was justiciable under the second exception of the *Feres* doctrine, which authorizes limited judicial review if official military action is taken in excess of authority. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The court decided the Adjutant General's decision was arbitrary, capricious, and unreasonable, because the Adjutant General lacked authority to convene the board of officers and its decision to separate Stephenson failed to comply with N.D.C.C. §§ 37–04–15 or 37–04–17. The court denied the Adjutant General's motion to dismiss, reversed and rendered the Adjutant General's decision null and void, and remanded to the North Dakota Air National Guard for disposition.

## II

[¶ 12] The Adjutant General argues the district court lacked subject matter jurisdiction to hear Stephenson's appeal under the Administrative Agencies Practice Act, because N.D.C.C. § 28–32–42(1) authorizes a district court to hear appeals of agency decisions issued only after adjudicative proceedings and the Adjutant General's decision in this case was not issued after an adjudicative proceeding, which is defined in N.D.C.C. § 28–32–01(1) to mean:

[A]n administrative matter resulting in an agency issuing an order after an opportunity for hearing is provided or required. An adjudicative proceeding includes administrative matters involving a hearing on a complaint against a specific-named respondent; a hearing on an application seeking a right, privilege, or an authorization from an agency, such as a ratemaking or licensing hearing; or a hearing on an appeal to an agency. An adjudicative proceeding includes reconsideration, rehearing, or reopening. Once an adjudicative proceeding has begun, the adjudicative proceeding includes any informal disposition of the administrative matter under section 28–32–22 or another specific statute or rule, unless the matter has been specifically converted to another type of proceeding under section 28–32–22. An adjudicative proceeding does not include a decision or order to file or not to file a complaint, or to initiate an investigation, an adjudicative proceeding, or any other proceeding before the agency, or another agency, or a court. An adjudicative proceeding does not include a decision or order to issue, reconsider, or reopen an order that precedes an opportunity for hearing or that under another section of this code is not subject to review in an adjudicative proceeding. An adjudicative proceeding does not include rulemaking under this chapter.

The Adjutant General contends N.D.C.C. § 37–04–15(1) does not require the Adjutant General to hold an adjudicative proceeding to vacate a North Dakota Air National Guard member's commission; rather, that statute requires an efficiency board as provided by federal regulation. Stephenson responds the Adjutant General is an administrative agency under N.D.C.C. § 28–32–01(2) and *Horst v. Guy*, 219 N.W.2d 153, 156 (N.D.1974), and his appeal to the district court is authorized by N.D.C.C. § 28–32–42(1).

■ [¶ 13] Under N.D. Const. art. VI, § 8, a district court has appellate jurisdiction conferred upon it by law for appeals from administrative agency decisions. *See DuPaul v. North Dakota Dep't of Transp.*, 2003 ND 201, ¶ 5, 672 N.W.2d 680. Section 28–32–42, N.D.C.C., authorizes appeals from an administrative agency order and provides, in part:

1. Any party to any proceeding heard by an administrative agency, except when the order of the administrative agency is declared final by any other statute, may appeal from the order within thirty days after notice of the order has been given as required by section 28–32–39. If a reconsideration has been requested as provided in section 28–32–40, the party may appeal within thirty days after notice of the final determination upon reconsideration has been given as required by sections 28–32–39 and 28–32–40. If an agency does not dispose of a petition for reconsideration within thirty days after the filing of the petition, the agency is deemed to have made a final determination upon which an appeal may be taken.

   . . . .

3. a. The appeal of an order may be taken to the district court designat-

ed by law, and if none is designated, then to the district court of the county in which the hearing or a part thereof was held. If the administrative proceeding was disposed of informally, or for some other reason no hearing was held, an appeal may be taken to the district court of Burleigh County. Only final orders are appealable. A procedural order made by an administrative agency while a proceeding is pending before it is not a final order.

■ [¶ 14] We construe statutes to ascertain legislative intent. *People to Save the Sheyenne River*, 2005 ND 104, ¶ 18, 697 N.W.2d 319; *In re Juran and Moody, Inc.*, 2000 ND 136, ¶ 6, 613 N.W.2d 503. "We initially seek to ascertain the legislature's intent from the language of the statute, and words in the statutes must be given their plain, ordinary, and commonly understood meanings." *People to Save the Sheyenne River*, at ¶ 18. We construe statutes as a whole to give meaning, if possible, to every word, phrase, and sentence. *Id.* We also harmonize statutes to avoid conflicts between them. *Id.*

[¶ 15] An "administrative agency" is defined to mean "each board, bureau, commission, department, or other administrative unit of the executive branch of state government, . . . and does not include . . . [t]he adjutant general with respect to the department of emergency services." N.D.C.C. § 28–32–01(2)(b). The department of emergency services is governed by N.D.C.C. ch. 37–17.1, and the plain language of N.D.C.C. § 28–32–01(2)(b) supports an interpretation that the Adjutant General is an administrative agency for other purposes. *See Horst*, 219 N.W.2d at 156. In *Horst*, 219 N.W.2d at 154–56, a career serviceman brought a class action to secure payment of a veteran's bonus under the Vietnam Conflict Veterans' Ad-

justed Compensation Act. Under that Act, the Adjutant General had promulgated a regulation for determining residency for purposes of receiving benefits. *Id.* at 156. In that context, this Court said "[i]t is agreed that the office of the adjutant general is an administrative agency under our law, and that the rules and regulations were promulgated in compliance with the requirements of the statutes." *Id.* This Court held the Adjutant General's regulation was valid and also construed the relevant statutory definition of resident to support the denial of the plaintiff's application for benefits in that case. *Id.* at 158–59. Although this Court's decision in *Horst* said the Adjutant General is an administrative agency, that decision involved a lawsuit for payment of adjusted compensation benefits and did not involve an issue about appealability of an agency decision.

[¶ 16] In *Hammond v. North Dakota State Pers. Bd.*, 332 N.W.2d 244, 248 (N.D. 1983), this Court construed a prior version of N.D.C.C. § 28–32–42 to authorize an appeal from a final decision by an "administrative agency," as that term was defined in N.D.C.C. § 28–32–01. When *Hammond* was decided, the relevant statutory language authorized an appeal from an agency "decision" and said "[a]ny party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from such decision." 332 N.W.2d at 248. This Court recognized a 1981 amendment to the definition of administrative agency had deleted language requiring the agency to have authority to issue an order "which by statute is subject to review in the courts of this state." *Id.* at 247. We said "the current definition of an administrative agency no longer requires that there be an express statutory grant of a right of review under a statute located outside the provisions of Chapter 28–32, N.D.C.C.,"

and under N.D.C.C. § 28–32–15, "decisions of administrative agencies which constitute 'final orders or decisions' . . . are appealable to the district court." *Hammond,* at 248.

[¶ 17] The relevant provisions in N.D.C.C. § 28–32–15 for appeals from administrative agency decisions have been reformatted and moved to N.D.C.C. § 28–32–42 since *Hammond. See* 1985 N.D. Sess. Laws ch. 356, § 1 (adding language about designation of parties); 1991 N.D. Sess. Laws ch. 342, § 23 (reformatting into six subsections, authorizing appeal from "order" instead of decision, and adopting language incorporating the reference to provisions about findings of fact and reconsideration); 1993 N.D. Sess. Laws ch. 329, § 4 (requiring filing of bond for costs and authorizing waiver of bond); 2001 N.D. Sess. Laws ch. 293, § 12 (moving N.D.C.C. § 28–32–15 to N.D.C.C. § 28–32–42).

[¶ 18] Here, the Adjutant General argues "any proceeding" in N.D.C.C. § 28–32–42(1) refers only to an "adjudicative proceeding" because that subsection incorporates the notice requirements for an adjudicative proceeding in N.D.C.C. § 28–32–39. We need not decide if "any proceeding" in N.D.C.C. § 28–32–42(1) refers only to an "adjudicative proceeding," however, because we conclude Stephenson's appeal is not authorized by other provisions of N.D.C.C. ch. 28–32 and N.D.C.C. ch. 37–04.

[¶ 19] Section 28–32–23, N.D.C.C., recognizes that notwithstanding the requirements for standardization of procedures in adjudicative proceedings, an agency may adopt specific rules of procedure not inconsistent with N.D.C.C. ch. 28–32 and may also adopt specific rules of procedure when necessary to comply with requirements elsewhere in the code or when necessary to comply with the requirements of federal

law. Section 37–04–15(1), N.D.C.C., provides that a commission in the national guard may be vacated when it is determined by an "efficiency board as provided by federal regulation that the officer holding the commission is no longer fit for service by reason of the officer's moral character, capacity, or general fitness for service." The plain language of N.D.C.C. §§ 28–32–23 and 37–04–15(1), when read together to give meaning to each provision, contemplates procedures that are governed by federal regulation and are excluded from the requirements of an adjudicatory proceeding in N.D.C.C. ch. 28–32.

[¶ 20] In *People to Save the Sheyenne River*, 2005 ND 104, ¶¶ 12, 17, 697 N.W.2d 319, one statute, N.D.C.C. § 61–28–07, authorized an appeal to the district court from an adverse ruling by the Health Department on a water permit and another statute, N.D.C.C. § 23–01–23, specifically precluded application of the procedures for an adjudicative proceeding to a permit hearing for purposes of receiving public comment. In that case, the administrative proceeding did not result in an adjudicative proceeding and there were no findings of fact and conclusions of law under N.D.C.C. § 28–32–39. *People to Save the Sheyenne River*, at ¶ 21. Nevertheless, N.D.C.C. § 61–28–07 authorized an appeal, and we reviewed the decision under the arbitrary, capricious, and unreasonable standard. *See People to Save the Sheyenne River*, at ¶ 24.

[¶ 21] Here, the decision of the Adjutant General was not made under N.D.C.C. § 37–04–15 or N.D.C.C. § 37–04–17, but rather was made in accordance with federal law. Whether the Adjutant General complied with the powers conferred under N.D.C.C. § 37–04–15 is therefore not at issue. This decision was a "unique separation," specifically nonavailability of paid status space, governed by

federal law and not covered by state statute. Any review or challenge to this decision is, therefore, governed by federal law. Under N.D.C.C. § 37–01–23, "[a]ll matters relating to the organization, discipline, and government of the national guard, not otherwise provided for in this title or in the general regulations, must be decided by the custom and usage of the armed forces of the United States." In reviewing Stephenson's brief on appeal, he claims that the basis cited for the discharge, which was Air Force Instruction 36–3209, paragraph 2.25.8 ANG Unique Separations/Nonavailability of Paid Status Space, does not apply to him. Stephenson claims the only authority for any board of officers is N.D.C.C. § 37–04–15 and N.D.C.C. § 37–04–17, yet he acknowledges the Adjutant General did not base Stephenson's separation on any board decision. The record clearly indicates the Adjutant General unilaterally made the decision to separate Stephenson from the North Dakota Air National Guard and transfer him to the Independent Ready Reserve based on Air Force Instruction 36–3209, paragraph 2.25.8. Stephenson asks this Court to interpret military law and to conclude Air Force Instruction 36–3209, paragraph 2.25.8 does not apply to Stephenson. We decline to engage in the construction of this military law in this context.

[¶ 22] Stephenson's reliance on *Nyberg v. State Military Dep't*, 2003 WY 43, 65 P.3d 1241, is misplaced because that decision said Wyoming law for contesting the exercise of that state's Adjutant General's authority required compliance with the Wyoming Administrative Procedure Act. *Id.* at ¶¶ 29–30.

[¶ 23] In the absence of any statute specifically authorizing an appeal to the state district court of a decision based on this particular federal law and applying N.D.C.C. § 37–01–23, we conclude the dis-

trict court erred in deciding it had appellate jurisdiction to hear Stephenson's appeal and erred in denying the Adjutant General's motion to dismiss the appeal.

[¶ 24] We decline the Adjutant General's invitation to treat Stephenson's attempted appeal as a petition for a writ of mandamus or other special proceeding. We conclude Stephenson's appeal is not authorized by statute and we do not consider whether the Adjutant General exceeded his authority under Air Force Instruction 36–3209 and the doctrine emanating from *Feres*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. *See Nyberg*, 2003 WY 43, ¶¶ 23–28, 65 P.3d 1241.

### III

[¶ 25] We reverse the district court judgment denying the Adjutant General's motion to dismiss Stephenson's appeal.

[¶ 26] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.