2007 ND 198

**In the Matter of Christopher James MIDGETT.**

**State of North Dakota, Petitioner and Appellee**

v.

**Christopher James Midgett, Respondent and Appellant.**

No. 20070109.

Supreme Court of North Dakota.

Dec. 13, 2007.

Dale R. Rivard, Assistant State's Attorney, and Derrick Roller (on brief), third-year law student, under the Rule on Limited Practice of Law by Law Students, Grand Forks, ND, for petitioner and appellee.

Troy R. Morley, Grand Forks, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1] Christopher Midgett appeals the district court's March 21, 2007 order committing him to the custody of the Department of Human Services as a sexually dangerous individual. We conclude the Sixth Amendment confrontation right does not apply to commitment proceedings under N.D.C.C. ch. 25–03.3 and the district court's application of N.D.C.C. ch. 25–03.3 is not erroneous. We affirm the district court's order.

I

·[¶ 2] In 1996, Midgett was adjudicated for sexual assault of a child. He was thirteen years old when the offense occurred. Midgett was placed with the Texas Youth Commission and remained in juvenile custody until he turned twenty-one. Midgett was convicted of failure to register as a sex offender on April 18, 2005. He received a one-year prison sentence with 275 days suspended for two years. One condition of Midgett's probation was completion of sex offender treatment. On November 16, 2006, Midgett's probation was revoked for failure to complete treatment.

[¶ 3] On November 1, 2006, the State petitioned for commitment of Midgett as a sexually dangerous individual under N.D.C.C. ch. 25–03.3. In addition to information about the 1996 sex offense, his failure to register, and his failure to complete sex offender treatment, the petition included references to three other instances of alleged sexually predatory conduct. On July 9, 2004, Midgett allegedly inappropriately touched a 10–year–old boy in a hotel pool. On February 12, 2005, Midgett was accused of "watching a little boy very intently" at a shopping mall. Midgett also allegedly entered the kitchen area of Northlands Rescue Mission without permission on December 28, 2005 and stared

at student volunteers. None of these incidents resulted in a criminal conviction.

[¶4] At the commitment hearing, three clinical psychologists testified as expert witnesses for the State. As part of their testimony regarding Midgett's risk of recidivism, the doctors discussed the three alleged incidents. The doctors also discussed the results of several psychological evaluations indicating Midgett had a high probability of re-offending. The evaluations took into account the three alleged incidents. Midgett objected to the psychologists' testimony because he was unable to confront the individuals who had reported and allegedly witnessed these events. The testimony was admitted despite Midgett's protest. On cross-examination, the psychologists testified that absent consideration of these incidents, their opinions regarding the risk of Midgett re-offending may have been different. The doctors also indicated the results of the psychological evaluations may have shown Midgett was less likely to re-offend if the information about the alleged incidents had been excluded.

[¶5] The district court found by clear and convincing evidence Midgett met the statutory definition of a sexually dangerous individual because he (1) engaged in sexually predatory conduct and (2) suffers from a mental disorder making him likely to engage in further acts of sexually predatory conduct. Midgett argues he was denied his constitutional right of confrontation because the experts testifying at the commitment hearing based their opinions partially upon reports generated by individuals who were not available for cross-examination.

## II

[¶6] Civil commitments of sexually dangerous individuals are reviewed under a "modified clearly erroneous" standard and will be affirmed unless the district court's "order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *In re Anderson*, 2007 ND 50, ¶21, 730 N.W.2d 570. Midgett's single issue on appeal is whether he was improperly denied the opportunity to cross-examine the individuals who reported the three alleged incidents.

[¶7] Chapter 25-03.3, N.D.C.C., provides for commitment of sexually dangerous individuals. A sexually dangerous individual is a person who has

"engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

N.D.C.C § 25–03.3–01(8). To commit someone under this chapter, the state's attorney files a petition with the district court. N.D.C.C. § 25-03.3–03(1). The State chooses experts to psychologically evaluate the individual. N.D.C.C. § 25–03.3–12. The individual is able to provide his own experts, and in cases of indigent respondents, an expert is appointed by the court to testify on the individual's behalf. *Id.* A commitment proceeding is subsequently held to determine whether the individual meets the definition of a sexually dangerous individual. N.D.C.C. § 25–03.3–13. The state's attorney must prove by clear and convincing evidence the individual is sexually dangerous. *Id.* If the State is successful, the individual "must remain in the care, custody, and control of the executive director until, in the opinion of the executive director, the individual is safe to be at large." N.D.C.C. § 25–03.3–17.

[¶ 8] Midgett argues he was denied the right to confront the individuals who reported the three alleged instances of sexually predatory conduct though the events were recounted by expert witnesses as fact. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Midgett argues this right should be extended to civil commitment proceedings. We disagree.

[¶ 9] This Court has determined the Sixth Amendment does not apply to civil cases. *Adoption of J.S.P.L.*, 532 N.W.2d 653, 660 (N.D.1995). "The legislature has clearly expressed its intent to create a civil, rather than criminal, procedure in N.D.C.C. ch. 25–03.3." *In re M.D.*, 1999 ND 160, ¶ 27, 598 N.W.2d 799. The respondent in *M.D.* argued the double jeopardy protections applied to criminal cases should also apply to civil commitment of sexually dangerous individuals. *Id.* at ¶ 24. This Court determined civil commitment is not intended to be punitive; its primary purpose is to protect the public from harm. *Id.* at ¶¶ 26, 28. Because the commitment procedure is not a criminal sanction, constitutional protections associated with criminal proceedings do not apply. *Id.* at ¶ 31.

[¶ 10] The Legislature may choose to extend similar protections to civil cases by statute. *Interest of B.B.*, 2007 ND 115, ¶ 15, 735 N.W.2d 855. *See, e.g.*, N.D.C.C. § 25–03.3–09 (right to counsel). In commitment proceedings of sexually dangerous individuals, the Legislature has afforded respondents the "right to be present, to testify, and to present and cross-examine witnesses." N.D.C.C. § 25–03.3–13. This right, however, is not the same right to confrontation granted criminal defendants by the United States Constitution.

[¶ 11] While the Legislature has granted respondents the right of cross-examination at the hearing, it also provides: "At the commitment proceeding, any testimony and reports of an expert who conducted an examination are admissible." N.D.C.C. § 25–03.3–13. Admissibility of evidence under N.D.C.C. § 25–03.3–15 is similarly permissive: "Notwithstanding any other provision of law, in any proceeding pursuant to this chapter, evidence of prior sexually predatory conduct or criminal conduct, including a record of the juvenile court, is admissible."

■ [¶ 12] This Court must "harmonize statutes to avoid conflicts between them." *Stephenson v. Hoeven*, 2007 ND 136, ¶ 14, 737 N.W.2d 260. We have held expert witnesses in commitment proceedings may base their opinions on any information "reasonably relied upon by psychologists in determining whether an individual is sexually dangerous." *Interest of D.V.A.*, 2004 ND 57, ¶ 9, 676 N.W.2d 776. In *D.V.A.*, the psychologist relied on penitentiary records, medical records, conversations with another psychologist, and four interviews with the respondent to form her opinion. *Id.* at ¶ 5. Because the respondent did not show this evidence was unreasonably relied on, the expert's testimony was admissible. *Id.* at ¶ 9. Any "weakness or non-existence of a basis for an expert's opinion goes to his credibility, and not necessarily to the admissibility of the opinion evidence." *Id.* This approach is consistent with N.D.R.Ev. 703, which states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

[¶ 13]   Midgett was afforded the opportunity to cross-examine the psychologists and to point out strengths and weaknesses of both the psychological evaluations performed and the evidence underlying their expert opinions.   We therefore conclude the district court did not misconstrue N.D.C.C. ch. 25–03.3.

### III

[¶ 14]   We conclude the Sixth Amendment confrontation right does not apply to civil commitments of sexually dangerous individuals and the district court did not erroneously apply N.D.C.C. ch. 25–03.3. We affirm the district court's order committing Midgett to the custody of the Department of Human Services as a sexually dangerous individual.

[¶ 15]   GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 16]   I concur with the majority opinion that the Sixth Amendment does not apply to civil commitment proceedings, but respectfully dissent from the affirmance of the civil commitment.   The district court improperly found that Midgett engaged in sexually predatory acts; two of the three acts referenced by the district court in its order do not meet the definition of "sexually predatory conduct" as defined by N.D.C.C. § 25–03.3–01(9); two of the "repetitious sexually predatory acts" referenced by the district court do not meet the definition provided in N.D.C.C. § 25–03.3–01(9).   The commitment is premised on actuarial instruments which do not address the recidivism of a particular individual, but only of a population meeting certain criteria.   This record demonstrates Midgett's involuntary commitment serves as an unconstitutional mechanism for general deterrence, which is not a permissible purpose for civil commitments.

### I

[¶ 17]   I have written about my concerns with relying on actuarial instruments that merely present statistical probabilities to civilly commit an individual.   I continue to have those concerns, but do not repeat them here.   *See Matter of Anderson,* 2007 ND 50, ¶¶ 54–69, 730 N.W.2d 570 (Kapsner, J., dissenting).

### II

[¶ 18]   In its memorandum decision and order, the district court stated:

In addition to the three specific instances referenced to above [i.e., Midgett's 1996 conviction for sexually assaulting a child, his failure to register as a sex offender, and his failure to successfully follow and complete a sex offender treatment program], there were also unrefuted indications of other repetitious sexually predatory acts committed by the Respondent upon young children outlined in all three psychological evaluations received into evidence during hearing.

[¶ 19]   In North Dakota, before an individual may be involuntarily committed as a sexually dangerous predator, the district court must find the individual has: (1) engaged in sexually predatory conduct; (2) has been diagnosed with a personality, sexual, or mental disorder that (3) makes the individual "likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."   N.D.C.C. § 25–03.3–01(8).   We have explained that the phrase "likely to engage in further acts of sexually predatory conduct" means the individual has demonstrated he has a "propensity towards sexual violence [ ] of such a degree as to pose a threat to others." *Matter of G.R.H.,* 2006 ND 56, ¶ 16, 711 N.W.2d 587.   "Sexually predatory conduct" is defined in N.D.C.C. § 25–03.3–

01(9). In addition to meeting the commitment requirements provided in the plain language of our involuntary commitment statute, this Court must be mindful of the substantive due process requirements addressed by the United States Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).

[¶ 20] In *Crane*, the United States Supreme Court provided that in order to satisfy substantive due process requirements, the individual to be committed must have been shown to have serious difficulty in controlling his behavior. 534 U.S. at 413, 122 S.Ct. 867; *see also G.R.H.*, at ¶ 18. Without such a requirement, sexually dangerous predator commitments make it impossible "to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, at 413, 122 S.Ct. 867 (citing *Kansas v. Hendricks*, 521 U.S. 346, 357–58, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *Foucha v. Louisiana*, 504 U.S. 71, 82–83, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). The distinction between a sexually dangerous predator and the "dangerous but typical recidivist" prevents courts from using this civil proceeding as a mechanism for general deterrence, which is "more properly dealt with exclusively through criminal proceedings." *Crane*, at 412, 122 S.Ct. 867 Thus, reading our commitment statute in conjunction with the substantive due process requirements announced in *Crane* requires clear and convincing evidence demonstrating the individual to be committed has:

(1) [engaged in] prior sexually predatory conduct; (2)[ ] some type of congenital or acquired condition manifested by a personality, sexual, or mental disorder; (3) [such] that the condition makes the individual "likely to engage in further acts of sexually predatory conduct" meaning the individual's propensity to-

wards sexual violence is of such a degree as to pose a threat to others; and (4) . . . serious difficulty controlling [his] behavior.

*Anderson*, 2007 ND 50, ¶ 47, 730 N.W.2d 570; *see also Crane*, at 413, 122 S.Ct. 867; *G.R.H.*, at ¶ 18.

[¶ 21] These four requirements must be met to ensure that involuntary civil commitments do not serve as cleverly disguised mechanisms for general deterrence, which subject the dangerous, but typical, recidivist to unconstitutional, long-term deprivations of liberty through involuntary civil commitment proceedings after they have paid their criminal dues. *Crane*, 534 U.S. at 412, 122 S.Ct. 867 (quoting *Hendricks*, 521 U.S. at 360, 372–73, 117 S.Ct. 2072) (underscoring "the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons' " and warning that civil commitment should not become a "mechanism for retribution or general deterrence").

[¶ 22] In the present case, the record fails to show Midgett meets all of the four criteria discussed above. Midgett may well be a recidivist, but the record does not support a finding that Midgett is a sexually dangerous predator; the conduct relied upon to assess the appropriateness of Midgett's commitment as a sexually dangerous individual does not satisfy the substantive due process requirements addressed in *Crane*.

[¶ 23] The State presented expert testimony from three clinical psychologists. Two of the State's psychologists testified about the evaluations they conducted to determine whether Midgett had some type of mental condition, Midgett's likeliness to engage in further acts of sexually predatory conduct such that he posed a threat to others, his ability, or lack thereof, to control his behavior, and their recommenda-

tion to commit Midgett. In addition to Midgett's prior sexual offense, adjudicated in 1996, and committed when Midgett was thirteen years old, all three psychologists relied upon three subsequent alleged acts during the evaluation process. Only the act alleged to have occurred at the motel involving a ten-year-old boy would meet the definition of sexually predatory conduct. One of the alleged acts of sexually dangerous behavior occurred in February 2005, when a supervisor alleged Midgett "watch[ed] a little boy very intently" at a shopping mall. The psychologists also relied upon the allegation that in December 2005, Midgett went into the kitchen area of Northlands Rescue Mission without permission and stared at young volunteers. These two allegations of watching and staring were weighed in the psychologists' evaluative reports, which ultimately determined Midgett was a pedophile and was likely to engage in further acts of sexually predatory behavior.

[¶ 24] On direct examination during the commitment hearing, the State's first witness, Dr. Belanger, testified that he relied upon the incident of "staring" at the mall to determine that Midgett was pedophile, making him sexually dangerous when coupled with his anti-social personality disorder, and was thus likely to re-offend:

Q. And which of these items did you use to sustain that [pedophilia] diagnosis?

A. The first items that I used was (sic) the existence of the earlier history of child sexual abuse. Granted, Mr. Midgett was 13 at the time. I'm still significantly unclear. As one who looks at potentially, it's indicative of what will then be diagnosable after he passes the age of 16 which is pedophilia. There's then in North Dakota enough evidence that he's charged with GSI against a ten year old boy. Then he's observed by one of his supervising agents to be, I think, the most neutral description of

this is starring (sic) intently at the buttocks of young boys in the mall.

Later in re-direct examination, Dr. Belanger testified these alleged incidents had the effect of raising Midgett's score or likelihood of recidivism in the diagnostic tools employed by the psychologists:

Q. The other question, I think, Mr. Morley was going to address and maybe addressed. Mr. Midgett when you take a look at the offenses, the only convictions are as a juvenile; is that correct.

A. Yes.

Q. But did he also have difficulties as an adult following release from the Texas Youth Center or Youth Correctional Center?

A. Yes, he did.

Q. And what difficulties did he have?

A. .... He was in the mall where he wasn't supposed to be. He had difficulties in that. There was the definite observed visualization between him and the boy. He disputes sexually. The witness says it differently. Looked like it to the witness.

Based in part upon Midgett's "intent watching" or "visualization," Dr. Belanger concluded Midgett had a propensity for recidivism based on the sexually predatory conduct on the basis of the sexual and personality disorder.

[¶ 25] The State's second witness, Dr. Sullivan, gave similar direct and cross-examination testimony, stating these incidents of staring affected her evaluations for both Midgett's disorder and his likelihood to re-offend. Dr. Sullivan also apparently considered Midgett's employment at a carnival in making her determinations, although no allegations of sexually predatory conduct arose out of his employment with the carnival.

[¶ 26] Based on this testimony, the determination that Midgett was likely to en-

gage in future sexually predatory conduct, was influenced by the allegations that Midgett "intently watched" children at a mall and "stared" at student volunteers at a rescue mission. All of the psychologists also testified that Midgett's diagnosis as a pedophile relied on these allegations. This evidence is so tenuous, so questionable in nature because it is completely subject to the observer's interpretation, that it violates the substantive due process rights announced in *Crane.* The mere accusation that an individual has looked at other people simply should not be weighed as evidence that indicates an individual is "likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others" such that the individual's propensity towards sexual violence is of such a degree as to pose a threat to others as required under N.D.C.C. § 25–03.3–01(8). Nor do these accusations rise to the level of conduct that would demonstrate an individual has serious difficulty controlling his behavior as required by the United States Supreme Court's holding in *Crane.* Since the psychologists relied upon acts of watching or staring at children in public places to establish both the diagnosis and the likelihood of re-offending, it is impossible to know what their testimony would be in the absence of those considerations.

### III

[¶ 27] The record further demonstrates the district court erroneously applied the definition of "sexually predatory conduct" as defined by N.D.C.C. § 25–03.3–01(9). Under N.D.C.C. § 25–03.3–01(9), the expert testimony provided and the conclusions drawn from this testimony in the district court's memorandum decision and order are problematic. The allegation that an individual intently watches children in a shopping mall or young people in a rescue mission, or working in an employment setting where children may be present, such as a carnival, is not sexually predatory conduct as defined by N.D.C.C. § 25–03.3–01(9). The district court also erroneously used Midgett's failure to register as a sex offender and failure to successfully complete a sex offender treatment program to consider whether he met the four criteria for commitment under chapter 25–03.3, N.D.C.C. Section 25–03.3–01(9), N.D.C.C., defines "sexually predatory conduct" as:

a. Engaging or attempting to engage in a sexual act or sexual contact with another individual, or causing or attempting to cause another individual to engage in a sexual act or sexual contact, if:

(1) The victim is compelled to submit by force or by threat of imminent death, serious bodily injury, or kidnapping directed toward the victim or any human being, or the victim is compelled to submit by any threat that would render an individual of reasonable firmness incapable of resisting;

(2) The victim's power to appraise or control the victim's conduct has been substantially impaired by the administration or employment, without the victim's knowledge, of intoxicants or other means for purposes of preventing resistance;

(3) The actor knows or should have known that the victim is unaware that a sexual act is being committed upon the victim;

(4) The victim is less than fifteen years old;

(5) The actor knows or should have known that the victim has a disability that substantially impairs the victim's understanding of the nature of the sexual act or contact;

(6) The victim is in official custody or detained in a treatment facility, health care facility, correctional facility, or

other institution and is under the supervisory authority, disciplinary control, or care of the actor; or

(7) The victim is a minor and the actor is an adult; or

b. Engaging in or attempting to engage in sexual contact with another individual or causing or attempting to cause another individual to have sexual contact, if:

(1) The actor knows or should have known that the contact is offensive to the victim; or

(2) The victim is a minor, fifteen years of age or older, and the actor is the minor's parent, guardian, or is otherwise responsible for general supervision of the victim's welfare.

[¶ 28] The majority does not point to, nor does there exist, any provision in this chapter that defines "sexually predatory conduct" in such a manner that would tolerate deeming Midgett's "watching" a form of sexually dangerous conduct. The district court erroneously concluded "watching" or "staring" could be defined as "repetitious sexually predatory acts." Thus, the district court clearly erred in applying N.D.C.C. § 25–03.3–01(9) to these allegations.

[¶ 29] Further, there is no statutory provision that would deem failure to register as a sex offender or failure to successfully complete sex offender treatment as sexually predatory conduct. N.D.C.C. § 25–03.3–01(9) (providing specific types of conduct that constitute "sexually predatory conduct"). *Contra In re M.D.*, 1999 ND 160, 598 N.W.2d 799 (considering failure to register as a sex offender and failure to complete sex offender treatment in determining an individual's likelihood to re-offend, but decided before *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)). Charges or convictions for failure to register and failure to complete treatment would be significant consider-

ations if the statutory basis of showing sexually predatory conduct is otherwise met. The district court referenced all of these forms of conduct in determining whether Midgett had engaged in prior sexually predatory conduct, whether he had a propensity towards sexual violence of such a degree as to pose a threat to others, and whether he had serious difficulty controlling his behavior. As a result, the district court erred in its application of the law and its ultimate determination that Midgett was a suitable individual for commitment.

[¶ 30] The district court properly considered Midgett's 1996 conviction and the allegations that he inappropriately touched a young boy in a swimming pool. This conduct falls within the definition of sexually predatory conduct as provided in N.D.C.C. § 25–03.3–01(9). But the district court's reliance on evaluations which determined Midgett posed a threat to others because he allegedly watched children at a shopping mall and stared at students at a rescue mission was error. This is not the type of conduct contemplated by N.D.C.C. § 25–03.3–01(9).

[¶ 31] Therefore, I dissent and would reverse the order committing Midgett as a sexually dangerous individual.

[¶ 32] CAROL RONNING KAPSNER